## UNITED STATES v. SHING SHUN & CO. et al.

(Circuit Court, N. D. California. August 13, 1909.)

### No. 13,786.

1. CUSTOMS DUTIES (§ 30*)—CLASSIFICATION—OLIVES—"IN BOTTLES, JARS, OR SIMILAR PACKAGES."

Tariff Act July 24, 1897, c. 11, § 1, Schedule G, par. 264, 30 Stat. 171 (U. S. Comp. St. 1901, p. 1651), relates to olives "in bottles, jars, or similar packages," and "in casks or otherwise than in bottles, jars, or similar packages." *Held*, that this language does not import an intention to make a division between olives in retail packages and those in wholesale pack-

---

ages, and that olives in jars holding 10 gallons are therefore within the first of these provisions.

[Ed. Note.—For other cases, see Customs Duties, Cent. Dig. §§ 72–77; Dec. Dig. § 30.*]

2. STATUTES (§ 190*)—CONSTRUCTION—UNEQUIVOCAL LANGUAGE.

Unless the terms of a statute are equivocal or uncertain, there is no room for construction; and where Congress has employed terms, not only well understood in trade, but in common, everyday use in domestic and household affairs, and about which no question can arise as to their definition, it must be presumed that such terms were employed with full knowledge of their signification, and no exception or qualification thereof may be interpolated into the act.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 266; Dec. Dig. § 190.*]

On Application for Review of a Decision by the Board of United States General Appraisers.

Robert T. Devlin, U. S. Atty., and George Clark, Asst. U. S. Atty.

Stanley Jackson, for respondents.

VAN FLEET, District Judge. The question presented in this case is as to the proper classification for duty under Tariff Act July 24, 1897, c. 11, 30 Stat. 151 (U. S. Comp. St. 1901, p. 1626), of certain importations of olives entered at the port of San Francisco. The pertinent provision of the act is paragraph 264, Schedule G, which, so far as it relates to olives, reads:

"Olives, green or prepared, in bottles, jars, or similar packages, twenty-five cents per gallon; in casks or otherwise than in bottles, jars, or similar packages, fifteen cents per gallon."

The olives involved were contained in earthen jars of a capacity of about 10 gallons each. They were returned by the appraiser as olives "in jars"; and the collector, under the foregoing provision of the act, assessed them at the rate of 25 cents per gallon. The importers contended that the olives were dutiable at the lesser rate of 15 cents per gallon, and protested to the Board of General Appraisers. The latter sustained this contention, and reversed the action of the collector; and the government has appealed.

It appears that the construction put upon the provision in question by the Board of General Appraisers has not been uniform. In G. A. 4,207 (T. D. 19,625), rendered June 30, 1898, the board had the same question presented for consideration, and in that case it was said:

"The merchandise consists of green olives in earthenware jars containing from 4 to 10 gallons each. They were assessed for duty at 25 cents per gallon under paragraph 264 of the act of July, 1897, and are claimed to be dutiable at 15 cents per gallon under the same paragraph. The pertinent portion of paragraph 264 reads: * * * The appellants contend that the usual capacity of bottles and jars containing olives is about one quart, and that these large jars more closely resemble casks and similar packages. Paragraph 264, however, makes no restriction nor limitation as to size. We find that the goods are olives in jars, and upon this finding the decision of the collector must be affirmed."

In a later case (T. D. 25,805, Abstract 3,908), where the same commodity was involved, and the question was presented upon precisely

similar facts and a like ruling of the collector, the board, without referring to its previous ruling, in effect overruled it. It is there said:

"Since it is not disputed that the jars each contained 10 gallons, we are of the opinion that the question involved falls within the ruling in G. A. 5,448 (T. D. 24,733), wherein the board, in passing upon the question of the rate of duty assessable on olives packed in tin cans containing from 5 to 15 gallons said: 'A reading of paragraph 264 leads to the conclusion that Congress had in mind two styles of packing for olives, one for retail trade in small packages for table or family use, and the other for wholesale trade in large packages. We are of opinion that a proper construction of the paragraph is that the provision for "bottles, jars and similar packages" means packages handled and used by people who deal in or use olives in packages in the form in which they are sold in glass bottles or jars.' We accord with this view, and it is of no consequence whether the covering be tin or earthenware, so long as the quantity is large enough to justify the presumption that it is such as is handled by the wholesale trade. We sustain the protest, and overrule the decision of the collector."

The ruling in the present case (T. D. 26,559, Abstract 7,138) is expressly put upon the authority of the case last referred to, the reasoning of which is adopted. The government contends that the ruling in G. A. 4,207 (T. D. 19,625) was a correct construction and application of the statute, and should be adhered to; and from a consideration of the very plain and unambiguous language of the statute I am constrained to the view that this contention must be sustained.

It will be seen that the board, in the case last quoted from, has ignored the plain terms of the act, and adopted a construction based upon an assumption of what Congress "had in mind." If there were anything equivocal or uncertain in the terms of the statute, there might be room for some such construction; but there is not. The statute says nothing about the wholesale trade or retail trade, nor about the capacity of the different classes of containers designated as falling within the one rate or the other; but in specifying the different classes of packages it employs terms not only well understood in trade, but in common, everyday use in domestic and household affairs, and about which no question can arise as to their definition. It must be presumed that in using those terms Congress did so with full knowledge of the customs and usages of the trade, and the popular and common understanding as to their signification; and the evidence in the record discloses that the particular class of earthen containers in which the olives in controversy were packed were commonly known and understood in the trade, and by the customs authorities and the importers alike, as jars, equally with those of smaller capacity of the same material, and that olives in such larger jars were sold both to the retail and wholesale trade.

It is apparent, I think, that no such exception or qualification as that sought to be interpolated into the act is to be gathered from its language, although it would have been a very simple thing for Congress to have expressed, if such was its purpose; but this it has not done, and, when no exception or qualification is found in the act itself, the courts are not at liberty to create one. By its terms the rate of duty is made to depend upon whether the article is imported in a certain designated character of receptacle, without regard to its capacity; and this requirement the customs authorities and the courts are

alike bound to observe. Where the language employed in an act is clear and certain, they have nothing to do with the reasonableness or justice of the results flowing from according it its natural, usual, and obvious meaning, nor with any supposed policy actuating its framers. Bate Refrigerating Co. v. Sulzberger, 157 U. S. 1, 15 Sup. Ct. 508, 39 L. Ed. 601. As aptly said in Scott v. Reid, 10 Pet. 524, 527, 9 L. Ed. 519:

"Where the language of the act is explicit, there is great danger in departing from the words used to give an effect to the law which may be supposed to have been designed by the Legislature. * * * It is not for the court to say, where the language of the statute is clear, that it shall be so construed as to embrace cases, because no good reason can be assigned why they were excluded from its provisions."

And again, in Hadden v. Collector, 5 Wall. 107, 111, 18 L. Ed. 518:

"What is termed the policy of the government with reference to any particular legislation is generally a very uncertain thing, upon which all sorts of opinions, each variant from the other, may be formed by different persons. It is a ground much too unstable upon which to rest the judgment of the court in the interpretation of statutes."

These considerations lead me to the conclusion that the ruling complained of is erroneous, and should be reversed; and a judgment will be entered to that effect.

