VANDEGRIFT & Co. *v.* UNITED STATES (No. 827).[1]

AN EXCESS OF 14 PER CENT OF ALCOHOL IN STILL WINES.

The wine here was tested in accordance with the regulations of the Treasury. It was ascertained to contain absolute alcohol perceptibly in excess of 14 per cent. This finding leaves no room for construction. The wines were dutiable as assessed at 60 cents per gallon under paragraph 307, tariff act of 1909.—United States *v.* Lueder (154 Fed. Rep., 1; T. D. 27918).

United States Court of Customs Appeals, April 17, 1912.

APPEAL from Board of United States General Appraisers, Abstract 27439 (T. D. 32126).

[Affirmed.]

*Brown & Gerry* for appellants.

*William L. Wemple*, Assistant Attorney General (*Leland N. Wood*, assistant attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The merchandise involved in this appeal consists of 14 casks of Italian wine shipped from Genoa. It is said to be a natural, unfortified, red wine. It was assessed for duty at 60 cents per gallon under paragraph 307 of the tariff act of August 5, 1909, which, so far as pertinent, reads as follows:

Still wines, including ginger wine or ginger cordial, vermuth, and rice wine or sake, and similar beverages not specially provided for in this section, in casks or packages other than bottles or jugs, if containing fourteen per centum or less of absolute alcohol, forty-five cents per gallon; if containing more than fourteen per centum of absolute alcohol, sixty cents per gallon. * * * The percentage of alcohol in wines and fruit juices shall be determined in such manner as the Secretary of the Treasury shall by regulation prescribe.

The importers contended below that this wine should be assessed at 45 cents per gallon as containing less than 14 per cent of absolute

---

alcohol. They make the same contention here. It is not, however, claimed that as a matter of fact according to the chemist's report the wine did, except in a single instance, under which no claim is made, contain less than 14 per cent or exactly 14 per cent. The excess over 14 per cent varied from eighteen one-hundredths of 1 per cent to seventy-five one-hundredths of 1 per cent, but it is claimed that this wine is a natural unfortified wine, and that a variation of eighteen one-hundredths of 1 per cent over 14 per cent did not, under the circumstances, make this dutiable as containing over 14 per cent of absolute alcohol, and this for the reason that the determination of the duty on that basis would be unreasonable; that the line of demarcation of 14 per cent should be construed commercially instead of scientifically; and it is argued that wine containing more than 14 per cent is usually such wine as is fortified by the addition of alcohol, and that what was really meant by Congress was that the unfortified wine should be admitted at the 45 per cent rate. The offer was made to show that the wine in question is not a fortified wine, but a dry or natural wine; that it is a wine grown in southern Italy, particularly Sicily, which, under favorable climatic conditions, at times contains naturally over 14 per cent alcohol, because of an excess of sugar in the grape; and further to prove that this class of wine, when the climatic conditions are not favorable, contains less than 14 per cent of alcohol. This testimony was excluded.

The Secretary of the Treasury had, in T. D. 15763, issued instructions for the analysis of wines subject to importation as follows:

Collectors are instructed in making an analysis of imported wines and fruit juices for the purpose of ascertaining the percentage of alcohol contained therein, to use the method of "distillation," that being the only method assuring accurate results in view of the fact that such wines and fruit juices usually contain saccharin or other solid matters in solution, making the test by the hydrometer impracticable.

This regulation was made applicable to the present law by T. D. 29939. Some question is made as to whether this regulation was followed in the present case. But the answer to that is that the witness for the Government on cross-examination testified in answer to the question.

Did you make the analyses of the wine in accordance with the regulations of the Secretary of the Treasury?—A. I did.
Q. You did that in this case?—A. Yes, sir.

And the board found the fact as follows:

The percentage of alcohol contained was determined in accordance with the regulations of the Secretary of the Treasury, and was found to be more than 14 per cent of absolute alcohol.

The testimony further shows that the human equation, so-called, would not amount to more than a variation of one one-hundredth or two one-hundredths of 1 per cent, so that the maxim *de minimis non*

*curat lex* can not be applied to this case. We have a case in which there is an ascertainable excess over 14 per cent of absolute alcohol.

The only question, therefore, becomes one of law, which is whether, in view of the plain provisions of this statute, the court may treat the line of demarcation as something other or different than one ascertainable under such regulations as the Secretary of the Treasury may prescribe. We think the case is one where rules of construction need scarcely be stated or resorted to. The statute is so plain and clear in its provisions that it may be said that there is no room for construction. The line of demarcation is between wines containing 14 per cent or less of absolute alcohol and those containing more than 14 per cent of absolute alcohol. Clearly any wine that contains alcohol in quantities perceptible and ascertainable above 14 per cent comes within the classification which fixes the higher rate of duty. If this language left the question at all in doubt, the further provision that the percentage of alcohol is to be determined in such manner as the Secretary of the Treasury shall by regulation prescribe would foreclose any question of doubt.

The case is in all substantial respects analogous to that of United States *v.* Lueder (154 Fed. Rep., 1; T. D. 27918).

This is not a case in which there was room for the application of the rule giving force to commercial usage. This question was discussed in the Bartram case (131 Fed. Rep., 833), where a similar contention was made, but the contention was overruled on reasoning which commends itself to the court. See also Newman *v.* Arthur (109 U. S., 132); American Sugar Refining Co. *v.* United States (1 Ct. Cust. Appls., 228; T. D. 31273).

The decision of the Board of General Appraisers is *affirmed.*