UNITED STATES *v.* HIRSH & SCHOFIELD (No. 1768).[1]

1. CONSTRUCTION, PARAGRAPH 385, TARIFF ACT OF 1913—MALT EXTRACT.

Malt extract can not be classified under paragraph 385, tariff act of 1913, because that paragraph includes only what is "not provided for in this section," and malt extract is provided for in paragraph 246.

[1] T. D. 37287 (33 Treas. Dec., 70).

2. CONSTRUCTION, PARAGRAPH· 246, TARIFF ACT OF 1913—"MALT EXTRACT"—
    "CASKS"—DRUMS.

In·paragraph 385, tariff act of 1913, Congress intended to include all kinds of malt extract, in whatever condition imported and whether in bulk or smaller packages. To effectuate the intent of Congress, the word "casks" in the paragraph will be held to include iron drums.

3. MALT EXTRACT, FLUID, IN IRON DRUMS.

Fluid malt extract in iron drums of 12½ gallons is dutiable as "malt extract, fluid, in casks" (par. 246, tariff act of 1913).

## United States Court of Customs Appeals, May 28, 1917.

APPEAL from Board of United States General Appraisers, Abstract 40070.

[Affirmed.]

*Bert Hanson*, Assistant Attorney General (*Frank P. Wilson*, special attorney, of counsel), for the United States.

. *Walden & Webster* (*Henry J. Webster* of counsel) for appellees.

[Oral argument Dec. 14, 1916, by Mr. Hanson and Mr. Webster.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

Fluid malt extract imported in iron drums having a capacity of 10 English gallons each, equivalent to 12½ American gallons, was classified by the collector at the port of New York as condensed malt extract, and assessed for duty at 45 per cent ad valorem under the provisions of paragraph 246 of the tariff act of 1913, which paragraph is as follows:

246. Malt extract, fluid, in casks, 23 cents per gallon; in bottles or jugs, 45 cents per gallon; solid or condensed, forty-five per centum ad valorem.

The importers protested that the merchandise was dutiable either directly under paragraph 246 or by similitude by force of paragraph 386 at 23 cents per gallon, or, if not so, at 10 or 15 per cent ad valorem as an unenumerated article raw or unmanufactured in whole or in part under paragraph 385, which reads as follows:

385. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for in this section a duty of ten per centum ad valorem, and on all articles manufactured, in whole or in part, not provided for in this section, a duty of fifteen per centum ad valorem.

The Board of General Appraisers held the merchandise dutiable at 23 cents per gallon under paragraph 246, and accordingly sustained the protest.

The case is here on appeal of the Government.

· The Government contends that the term "cask" is always used to describe a wooden vessel and that the malt extract here being not therein imported can not be classified under paragraph 246. It contends for classification under paragraph 385.

The importers insist that the purpose of Congress was to include all kinds of malt extract in all kinds of packages in paragraph 246,

and further that the intent is apparent in the paragraph to impose a higher duty on the same when in small or retail packages and a lower rate on large packages, and urge that this intent should be executed by holding the merchandise dutiable under the paragraph by similitude to malt extract imported in casks.

The iron drums have been separately assessed, so the only question is as to the proper duty chargeable upon the malt extract.

We think an understanding of the issue here will be aided by a knowledge of the legislative, administrative, and judicial history of the tariff provisions governing malt extract.

In the tariff act of 1883 there was no provision for malt extract eo nomine. The Treasury Department in T. D. 2338 (July, 1875) had classified it as "beer" when imported in casks. The same classification was adopted in T. D. 5372 (August, 1882), where the merchandise was known as Dantzic spruce beer or malt extract, the nature of the container not being stated. Malt extract was held to be a medicinal proprietary preparation in T. D. 2867 (June, 1876), where the merchandise was Johann Hoff's malt extract in glass bottles, sealed, stamped, and labeled as a medicine. In T. D. 4834 (April, 1881), the same article, imported apparently in casks, was given the same classification, with directions that the article should be so classified in whatever form imported. This was followed in T. D. 6917 (May, 1885), where the merchandise was known as "Loeflund's Diastase," malt extract, the nature of the container not appearing. In T. D. 10157 (August, 1890) the department held that malt extract which was nonmedicinal should be classified as a nonenumerated manufactured article. The nature of the container does not appear.

In 1890 following these decisions Congress enacted in paragraph 338 a provision for malt extract as follows:

338. Malt extract, fluid, in casks, 20 cents per gallon; in bottles or jugs, 40 cents per gallon; solid or condensed, forty per centum ad valorem.

In United States *v.* Eisner & Mendelsohn Co. (59 Fed., 352), decided in January, 1894, Johann Hoff's Malt Extract in glass bottles holding each not more than a pint and not less than a quarter pint was under consideration. It had been assessed for duty as a medicinal preparation. The Board of General Appraisers had sustained a protest claiming dutiability under paragraph 338 of the act of 1890 above quoted. The Circuit Court, Coxe, Judge, in In re Eisner et al. (54 Fed., 671), decided March, 1893, had reversed the board, holding the merchandise to be dutiable as assessed. The Circuit Court of Appeals found the merchandise to be compounded of several ingredients prepared according to a secret formula and to be a medicinal proprietary preparation, but it was, as stated, labeled a malt extract. It appeared also that there were other malt

extracts which were proprietary preparations and that in addition others were made according to a public and well-known formula of Baron Liebig. These several preparations varied in consistency from a dry powder to a semifluid and were imported and bought in barrels, bottles, and jugs, by the pound or by the gallon.

The Circuit Court of Appeals, after reciting all these and other facts, held in substance that in view thereof, mentioning specially that different rates of duty had been from time to time assessed upon both the proprietary and nonproprietary malt extracts, it was reasonable to infer, and the court did infer, that, in the enactment of the paragraph 338, it was the intent of Congress to cover all known kinds of malt extract in all known conditions in which it was imported, whether in bulk or in such smaller packages as were frequently characteristic of the proprietary preparations. The merchandise was held dutiable as malt extract.

In the next tariff act, 1894, paragraph 246, the preceding paragraph, was amended by inserting after "malt extract," the words, "including all preparations bearing the name and commercially known as such."

Paragraphs 298 of 1898, 309 of 1909, and 246 (hereinabove quoted) employ the identical language of the act of 1890. · Thereunder, prior to the act of 1913, there were several decisions covering malt extract in bottles, in casks, and in packages not stated, all of which recognized the Eisner case as authority, but it does not appear that the question of whether or not malt extract in metal drums was dutiable under the paragraph was considered. See G.-A. 2440 (T. D. 14718,) Abstract 6050 (T. D. 26289), Abstract 7074 (T. D. 26516), T. D. 32269, and Abstract 30994 (T. D. 33055).

Abstract 32313 (T. D. 33409) involved condensed malt extract in drums classified by the collector under paragraph 309 of the act of 1909. It was held by the board to be a nonenumerated manufactured article, but this court—see United States v. Conkey (4 Ct. Cust. Appls., 505; T. D. 33920)—held it to be dutiable as assessed upon the ground that as to condensed malt extract it mattered not under the paragraph what was its container. That was the only question decided.

There is no evidence as to administrative practice in the assessment of malt extract in iron drums. It is claimed by the importers in argument and not controverted as we understand, by the Government, that the use of metallic drums as containers of imported malt extract is of recent commercial adoption.

The merchandise here is conceded to be of the same character as that considered by this court in United States v. Britt, Loeffler & Weil (7 Ct. Cust. Appls., 63 ; T. D. 36389), but the issue there was whether the importation was fluid malt extract or condensed malt extract, no question as to the character of the container being raised.

At the outset we think the impression obtained from the reading of the paragraph before us is, as was said by the Circuit Court of Appeals in the Eisner case, that Congress *intended* to cover all kinds of malt extract in whatever condition imported and whether in bulk or smaller packages. This impression is strengthened when we consider the judicial and legislative history of the paragraph above set forth.

Assuming that intent when the paragraph was first enacted, can it be said to have changed in the interim? All the subsequent enactments except that of 1894 are, as far as the subject matter (malt extract) is concerned, identical. No change of intent can therefrom be presumed, and we think the paragraph in the act of 1913 was intended, just as it was when first enacted, to cover all imported malt extract.

In this connection it should be noted that in this case a contrary view results in classifying an enumerated article under a paragraph (385) which in terms provides that it shall apply only to articles that are neither enumerated nor provided for.

The inconsistency of this course is all the more apparent when we consider that inasmuch as these metallic drums are separately assessed the malt extract must pay a higher rate of duty than the law provides for that article; that is, it results in penalizing the use of a container which is suitable and proper and the use of which the law recognizes by providing specifically for duty thereon.

The only obstacle here that interferes with the execution of the legislative intent arises from the fact that the word "casks," as most generally used does not contemplate metallic containers like the drums here under consideration. Hence, reduced to its simplest form, we have the question of whether the intent to classify all malt extracts under paragraph 246 shall be defeated because such extract is imported in metallic drums.

In the New International Dictionary there is some little indication that the word "cask" as used in connection with taxation statutes has a broad significance. We find it there stated that cask or package in the usage of the United States internal revenue is meant to include any portable vessel capable of being gauged, etc.

But, however this may be, the principle is well settled that meanings not most generally imputed to words and sometimes almost contrary thereto will be adopted by the courts when necessary to execute legislative intent or to prevent its defeat. Lewis's Sutherland's Statutory Construction (secs. 347, 348 and cases cited); Church of the Holy Trinity *v.* United States (143 U. S., 457); Silver *v.* Ladd (74 U. S., 219).

In this last case the court held, in view of the ascertained legislative intent, the words "single man" and "married man" should be construed to include an unmarried woman.

The whole case may be summed up as follows:

The merchandise has been assessed as condensed malt extract. That is wrong.

The importers have claimed directly or by similitude under paragraph 246 and in the alternative under paragraph 385.

To classify the malt extract under paragraph 385 is not permissible because it is an enumerated article under paragraph 246.

The only obstacle to a classification under paragraph 246 is that "casks" is not ordinarily used as meaning an iron drum but, from the fact that when first made casks were necessarily made of wood, is more commonly used as referring to casks of wood.

The iron drums here serve the identical purpose of wooden casks in that they are containers of malt extract for purposes of transportation and, because we think it may safely be assumed of common knowledge that 12 gallons is a greater quantity than that ordinarily purchased at one time by a consumer, for purposes of repacking in smaller containers for the ultimate consumer's use. To treat them as casks for the purposes of this case works no injustice to the Government, because the malt extract itself pays the duty provided therefor in paragraph 246 and the drums themselves are otherwise dutiable. In addition it results in a consistent and equal classification of the merchandise to which paragraph 246 is directed, namely, malt extract. It also executes what we find to be the congressional intent.

We hold, therefore, that this malt extract is directly classifiable as in casks under paragraph 246, and the judgment of the Board of General Appraisers is *affirmed*.

### DISSENTING OPINION.

SMITH, Judge: I can not bring myself to concur in the majority opinion in this case. On the hearing before the board it was conceded by the Government that the importation here involved was of the same character as that involved in United States v. Britt, Loeffler & Weil (7 Ct. Cust. Appls., 63; T. D. 36389). The merchandise in that case was fluid extract of malt, and the sole question presented by the record here is whether merchandise of that kind imported in iron *drums* is dutiable as malt extract, fluid, in *casks*.

The Government contends that as the term "cask" necessarily implies a wooden container, an iron drum can not be regarded as a cask, and that therefore fluid malt extract in iron drums is not provided for in paragraph 246 as held by the board. It is admitted by the Government, however, that the protest should be sustained on the ground that the merchandise is a nonenumerated manufactured article dutiable at 15 per cent ad valorem under paragraph 385. The importers admit that the term "cask" is not broad enough to include

iron drums, but insist, first, that the legislative purpose of the provision was to favor fluid malt extract in large packages because of the necessity of repacking it in this country in smaller containers for the consumer, and that consequently the quantity contained, rather than the quality of the container, is determinative of classification, and, second, that if fluid malt extract in containers other than casks, bottles, and jugs is not directly dutiable under paragraph 246 it is nevertheless dutiable under that provision by similitude.

"Cask" is a generic term which embraces the tun, the pipe, the hogshead, the butt, the barrel, the half barrel, and the keg, and representing as it does containers ranging in capacity from 5 gallons to 252 gallons and over, it might be considered as an irregular measure of capacity. Jugs and bottles have a capacity running, let us say, from the ounce bottle to the 5-gallon jug, and in a sense they might also be regarded as irregular liquid measures.

The provision for fluid malt extract in casks, bottles, and jugs first appeared as paragraph 338 of the tariff act of 1890, and I think it may be taken for granted that at that time fluid malt extract was imported in casks, bottles, or jugs only, and that until recent years it was not imported in drums. Under paragraph 338 malt extract in casks was assessed at 20 cents per gallon and that in bottles and jugs at 40 cents per gallon. That, I think, was a discrimination which had for its reason the containers rather than the quantities contained. Congress, of course, knew that the extract in large quantities per unit was of necessity put up in casks; that small quantities were usually packed in bottles or jugs; and that large quantities of a commodity not ready for immediate consumption should ordinarily be subjected to a lower rate than smaller quantities put up in packages suitable for the consumer's use. But Congress also knew that some jugs would hold as large a quantity as some casks, and therefore, as it could not say that all quantities held in casks were too large for the consumer's use it found it impracticable to say that cask quantities should bear the lower rate and jug quantities the higher rate of duty. The extract in casks, large or small, evidently required repacking and in that form was not put up for, sold to, or used by the consumer, whereas the extract in bottles and jugs was ready for consumption, and in those receptacles was sold to and used by the consumer. That relation of casks, bottles, and jugs to the consumer definitely differentiated the extract which was intended for the consumer from that which was not, and it was wholly unnecessary, if not unwise, to classify the commodity or impose duties on the basis of quantities alone.

If Congress had intended that the quantity contained and not the container should determine the duty on fluid malt extract, I can not believe that the language of paragraph 338 would have been

employed to express that purpose when the end desired might have been accomplished unmistakably by simply providing that packages containing not less than 5 gallons of fluid malt extract should pay a duty of 20 cents per gallon, and otherwise than in such packages 40 cents per gallon. Moreover, that the lawmakers could not have intended that classification of the goods should be based on the capacity of the containers and not on the containers themselves would seem to be manifest when we consider that any such basis as that would result in laying a duty of 20 cents a gallon on 5 gallons or less of fluid malt extract imported in a keg and 40 cents per gallon on the very same quantity contained in a jug, leaving it impossible to determine whether the lower or the higher rate should be applied to quantities of less than 5 gallons imported in containers other than casks and jugs. I therefore conclude that when Congress, in 1890, imposed a duty of 20 cents per gallon on fluid malt extract in casks and 40 cents per gallon on that in bottles and jugs it intended that the container, not the quantity, should determine the duty, and that in so doing it established a dividing line between the lower and the higher rate which might be readily identified and which was in strict accord with the principles of tariff making.

Conceding that Congress, by providing in 1890 for fluid malt extract in casks, bottles, and jugs, really intended to provide for every form of malt extract then known to importation, that fact does not warrant the conclusion that conditions were actually provided for which were neither mentioned, thought of, nor foreseen. In other words, although paragraph 338 covered and was intended to cover all malt extract in all its then known conditions, from that it can not be deduced that there was a legislative intention to provide for it in conditions not then contemplated, no language indicative of a purpose to cover conditions not enumerated having been used. Had Congress intended to provide in 1890 for malt extract in forms other than those specified it could have provided for it in bottles or jugs, and "otherwise than in bottles or jugs," just as it did for ale, porter, and beer in paragraph 337, and for ginger ale, ginger beer, lemonade, soda water, and other similar waters in paragraph 340. I am therefore of opinion that paragraph 338 of the tariff act of 1890 did not include and was not intended to include fluid malt extract in drums or tins or in any form other than in casks, bottles, or jugs, and that as paragraph 246 of the tariff act of 1913 is, with the exception of the rate of duty, a reenactment of paragraph 338, the later legislative dispensation must be given the same meaning as that accorded to its prototype, and consequently can have no greater scope than that of the earlier provision, of which it is substantially a reproduction. It may be that fluid malt extract in iron drums should, as a matter of tariff policy, be subjected to the same rate of duty as

that in casks, and it may be that had Congress known that iron drums had come into use as containers of the extract, paragraph 246 would have been so worded as to include the commodity in that form. The fact remains, however, that the extract in iron drums was not provided for in the paragraph, and that omission, whether intended or inadvertent, we have no power to supply. United States v. Shing Shun & Co. (173 Fed., 844).

The claim that fluid malt extract in iron drums is dutiable under paragraph 246 by reason of its similitude to fluid malt extract in casks can not be sustained. The merchandise subjected to duty by the paragraph is malt extract, fluid, and its nature or character as such is not altered or changed by the character of the container in which it is held. Fluid malt extract, whether in casks or in drums, is nevertheless fluid malt extract, and if not directly dutiable under paragraph 246 it can not be brought there by similitude, inasmuch as the commodity is not a material or substance similar to fluid malt extract, but the identical thing itself. Schoeneman v. United States (119 Fed., 584); Fensterer & Ruhe v. United States (1 Ct. Cust. Appls., 93; T. D. 31110); Strauss & Co. v. United States (2 Ct. Cust. Appls., 203, 205; T. D. 31946). It may be that the merchandise is similar to some of the manufactures of malt provided for in the act, but as the case was not tried on that theory we are left without the information necessary for a satisfactory determination of that question.

On the record submitted to us and the admissions of the Government I am of the opinion that the fluid malt extract of this case should be assessed for duty under paragraph 385 as a nonenumerated manufactured article and that the decision of the Board of General Appraisers should be reversed.