UNITED STATES *v.* MALLINCKRODT CHEMICAL WORKS (No. 1996).[1]

1. CONSTRUCTION, PARAGRAPH 5, TARIFF ACT OF 1913—"CHEMICAL * * * COMPOUNDS"—HOMATROPINE HYDROBROMIDE.

Homatropine hydrobromide is not composed of a single element, nor is it natural or uncompounded. It is a product of chemical reactions, and is composed of various chemical elements. This constitutes the article a chemical compound as distinguished from a chemical mixture, and brings it within the classification "chemical * * * compounds," in paragraph 5, tariff act of 1913.—Strohmeyer & Arpe Co. *v.* United States (2 Ct. Cust. Appls., 285; T. D. 32035.)

2. CONSTRUCTION, PARAGRAPH 17, TARIFF ACT OF 1913—"INDIVIDUAL PACKAGES."

The language of paragraph 17, tariff act of 1913, "put up in individual packages of two and one-half pounds or less gross weight," is unambiguous, unmistakable, and unqualified; it should therefore be free from extraneous construction. The sole and single test is that of weight; no reference is made, either directly or indirectly, to any other consideration, such as price, quality, origin, method of manufacture, character of container, suitability for use or sale, or any other matter. Nor does any distinction between wholesale and retail packages appear, the only line of demarcation being weight.

3. HOMATROPINE HYDROBROMIDE IN LESS THAN 2½-POUND PACKAGE.

Ten ounces of homatropine hydrobromide contained in a single glass bottle, which is packed in a small wooden box, the entire parcel weighing less than 2½ pounds, is dutiable under paragraph 17, tariff act of 1913—"chemical * * * compounds * * * put up in individual packages of two and one-half pounds or less gross weight"—notwithstanding that this is so large a quantity as to suffice a wholesale house for several months' stock.

United States Court of Customs Appeals, November 25, 1919.

APPEAL from Board of United States General Appraisers, G. A. 8274 (T. D. 38074).

[Reversed.]

*Bert Hanson,* Assistant Attorney General (*Martin T. Baldwin,* special attorney, of counsel), for the United States.

Submitted on record by appellee.

[1] T. D. 38208 (37 Treas. Dec., 245).

[Oral argument Oct. 17, 1919, by Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise involved in this case is homatropine hydrobromide, which is a crystalline powder having the chemical formula of $C_{10}H_{21}O_3NHBr$. It is used in medicine and surgery, principally for dilating the pupil of the eye.

The shipment in question consisted of 10 ounces of the powder contained in a single glass bottle which was packed in a small wooden box. The entire parcel weighed less than $2\frac{1}{2}$ pounds.

The importation was entered for duty as an alkaloid dutiable at 15 per cent ad valorem under paragraph 5, tariff act of 1913. The collector, however, refused this classification, and assessed duty upon the merchandise at the rate of 20 per cent ad valorem, as a chemical or medicinal compound or combination put up in individual packages of $2\frac{1}{2}$ pounds or less gross weight, within paragraph 17 of the same act.

The paragraphs in question read as follows:

5. Alkalies, alkaloids, and all chemical and medicinal compounds, preparations, mixtures and salts, and combinations thereof not specially provided for in this section, 15 per centum ad valorem.

17. Chemical and medicinal compounds, combinations and all similar articles dutiable under this section, except soap, whether specially provided for or not, put up in individual packages of two and one-half pounds or less gross weight (except samples without commercial value), shall be dutiable at a rate not less than 20 per centum ad valorem: *Provided*, That chemicals, drugs, medicinal and similar substances, whether dutiable or free, imported in capsules, pills, tablets, lozenges, troches, ampoules, jubes, or similar forms, shall be dutiable at not less than 25 per centum ad valorem.

The importers protested against the collector's assessment, relying upon their entry claim, and the issue was submitted upon testimony to the Board of General Appraisers. The board sustained the protest, and the Government now appeals.

The importers base their contention upon three propositions. They claim, first, that the article is in fact a chemical only and not a chemical compound, since it is itself an entity; that is to say, it is not a substance which is a mixture of chemicals not chemically united, but is instead a chemical which has chemical and physical properties belonging peculiarly to itself, whereas, according to their claim, a compound, whether chemical or medicinal, usually signifies a mixture of chemicals not chemically united, having chemical and physical properties of the various ingredients. The second claim of the importers follows the one just stated, and is to the effect that the article is pure homatropine hydrobromide, a chemical entity, not mixed or compounded with any other chemical, medicinal, or other substance, and as such, following T. D. 34184, is not dutiable under paragraph

17. The third contention of the importers is that the present article is not a proprietary or patent medicine and is not bought and used by the laity as such, but is an ingredient in prescriptions prepared by physicians, who in most cases directly administer the prescription to the patient; that the present shipment therefore is not subdivided into individual packages to be sold as such to the trade or to consumers, but is a single undivided stock shipment containing a fair-sized quantity for a large house to import to last them over a period of several months, to be sold in usual quantities of from 1 to 15 grains at a time to the domestic trade. The importers claim that such a shipment is not governed by the provisions of paragraph 17 relating to individual packages of 2½ pounds or less.

The board held against the importers upon their first and second claims, and we think that this ruling is correct. The article in question is not composed of a single element, nor is it natural or uncompounded. It is a product of chemical reactions and is composed of various chemical elements. This constitutes the article a chemical compound as distinguished from a chemical mixture. See Strohmeyer & Arpe Co. v. United States (2 Ct. Cust. Appls., 285; T. D. 32035).

The board, however, held with the importers upon their third contention, and the following extract from the decision expresses the line of reasoning upon which the decision is based:

The question remains—a question much more difficult of solution—namely, whether the Congress in prescribing the minimum rate in paragraph 17 intended it to apply to a single package imported by itself, which, while below the prescribed maximum weight, was not imported for sale in that package, but the bottle in which it was imported was the container of what, for this peculiar substance, is a fairly large quantity—a four months' supply for the trade supplied by the importers and sold a few grains at a time.

We held in Strohmeyer & Arpe's case, G. A. 7896 (30 Treas. Dec., 708), that—

The main purpose of this clause in paragraph 17 was to encourage the importation in bulk of medicinal compounds and commercial or scientific chemicals and similar articles and to encourage their repacking in smaller packages in the United States.

As such purpose would be in no way subserved by applying the minimum rate prescribed in paragraph 17 to the shipment here involved, we hold that Congress did not intend to include such a shipment within the minimum provision.

It is further to be noted that paragraph 17 speaks of packages in the plural, which implies a larger shipment subdivided into packages for distribution and sale, and therefore one package containing a material such as this seems not only to be without the spirit and purpose of the provision but also without its letter, taken literally.

We are unable to agree with this view of the statute. It seems to us that the language of paragraph 17, supra, in so far as it bears upon this subject, is unambiguous, unmistakable, and unqualified. It should therefore be free from extraneous construction. The paragraph provides that all such chemical and medicinal compounds, combinations, and similar articles as are dutiable under its terms,

whether specially provided for or not, if put up in individual packages of $2\frac{1}{2}$ pounds or less gross weight, shall be dutiable at a rate not less than 20 per cent ad valorem. The sole and single test expressed in the provision is that of weight alone; no reference is made either directly or indirectly therein to any other consideration, such as price, quality, origin, method of manufacture, character of container, suitability for use or sale, or any other matter. Nor does any distinction between wholesale and retail packages appear in the provision; the only line of demarcation expressed therein being that of weight. The contention of the importers tends to incorporate in the statute a new and additional term which substantially varies its meaning from that written by Congress. This leads virtually to an amendment of the law and not to its enforcement. It would substitute for the exact terms of the act an indefinite rule of construction drawn from argument and inference concerning the legislative motives which led to the enactment, all of which, however, are foreign to the enactment itself. It may be repeated that there is no ambiguity in the language of the act in this particular, and that no term is used therein which requires a recourse to other sources of information than the act itself for its definition. The suggestion that the plural term "individual packages" as used in the act indicates a legislative purpose to limit the enactment to larger shipments which are subdivided into individual packages for distribution and sale seems to us to be unwarranted. The use of such plural terms is natural and usual in tariff provisions which are intended to apply alike to shipments of single or plural packages. In this case it raises no ambiguity, nor does it tend to modify the general provision in question.

The case of United States *v.* Shing (173 Fed., 844), presents a question somewhat similar to the present one. The tariff provision in question enumerated "olives, in bottles, jars, or similar packages." The importers contended that this referred only to packages of a retail character, ready for family use, and did not include a 10-gallon jar intended for the wholesale trade only. In overruling this contention, the court said:

It will be seen that the board in the case last quoted from has ignored the plain terms of the act, and adopted a construction based upon an assumption of what Congress "had in mind." If there were anything equivocal or uncertain in the terms of the statute, there might be room for some such construction; but there is not. The statute says nothing about the wholesale trade or retail trade, nor about the capacity of the different classes of containers designated as falling within the one rate or the other; but in specifying the different classes of packages it employs terms not only well understood in trade, but in common, everyday use in domestic and household affairs, and about which no question can arise as to their definition. See Parodi *v.* United States (8 Ct. Cust. Appls., 395; T. D. 37644); Strohmeyer *v.* United States (178 Fed., 268); Vandegrift *v.* United States (3 Ct. Cust. Appls., 176; T. D. 32462

United States v. Sprague (4 Ct. Cust. Appls., 358; T. D. 33532); United States v. Younglove Grocery Co. (5 Ct. Cust. Appls., 377; T. D. 34873)

The decision of the board is *reversed*.