(C. D. 1594)

MURRAY BLOCK, TEMPORARY ADMINISTRATOR FOR ESTATE OF LOUIS S. FRYER *v.* UNITED STATES

United States Customs Court, Second Division

(Decided March 11, 1954)

*Sharretts, Paley & Carter* (*Howard Clare Carter* of counsel) for the plaintiff.
*Warren E. Burger*, Assistant Attorney General (*Richard M. Kozinn*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

FORD, Judge: This case presents for our consideration and determination the question of whether certain rayon yarn, singles, is dutiable upon the basis of its actual weight, or is dutiable upon the basis of its weight as established by commercial usage.

The collector found that this merchandise weighed less than 150 deniers per length of 450 meters, by actual weight, and levied duty thereon at the rate of 32½ cents per pound under the provisions of paragraph 1301 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802. Plaintiff claims said yarn to be properly dutiable at 22½ per centum ad valorem, but not less than 22½ cents per pound, under said paragraph 1301, as modified, *supra*, as yarn, weighing 150 deniers or more per length of 450 meters.

At the trial of this case, the court granted a motion, made by counsel for the plaintiff, to substitute Murray Block as temporary administrator of the estate of Louis S. Fryer, deceased, the original plaintiff herein.

The competing provisions of paragraph 1301 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, *supra*, are as follows:

Yarns of rayon or other synthetic textile:

Weighing one hundred and fifty deniers or more per length of four hundred and fifty meters:

Singles, not specially provided for_____22½% ad val., but not less than 22½¢ per lb.

Weighing less than one hundred and fifty deniers per length of four hundred and fifty meters:

Singles, not specially provided for_____27½% ad val., but not less than 32½¢ per lb.

There is in evidence herein as exhibit 2 the customs laboratory report, which was attached to the official papers. This report is as follows:

Five tests of the sample show it to be a 145 denier viscose rayon yarn.

With reference to said report, counsel for the respective parties agreed:

* * * that the facts contained therein are correct and that the formula used in arriving at the figure of 145 deniers in Exhibit 2 is the formula used by the American Society For Testing Materials and the United States Testing Company and that this formula is the standard formula used by the trade in ascertaining denier weight.

It was further agreed between counsel:

* * * that the rayon upon which the tests were made and which is reported in Plaintiff's Exhibit 2 was obtained and conditioned in the following manner:

(1) The first 500 meters were measured off and cut from the cone, examined, and discarded.

(2) Then 450 meters were measured and reeled off and placed in a conditioning room.

(3) Then an additional 250 meters were reeled off and discarded.

(4) Then 450 meters were measured and reeled off and placed in a conditioning room.

(5) This procedure was repeated until 5 skeins of 450 meter lengths were obtained and conditioned.

(6) The 5 skeins which were placed in the conditioning room were kept in such room for at least 6 hours, which room was kept at a relative humidity of 65 per centum and a temperature of 70 degrees Fahrenheit.

(7) The yarn which was then in a relaxed condition was weighed and weighed 145 deniers per length of 450 meters.

Two well-qualified witnesses testified for the plaintiff. Their testimony establishes that in trade and commerce, in dealing with merchandise similar to that here involved, a purchaser of 150-denier yarn would not reject it because the yarn weighed only 145 deniers; that a purchaser would expect to get yarn weighing approximately 142 deniers if he ordered 150-denier continuous process yarn to compensate for the residual shrinkage that amounts to about 5 per centum, plus an additional tolerance of 4 per centum of 142 up or down; that, for many years, yarn has been sold, billed, and shipped

as 150-denier yarn, but 150-denier yarn has not been delivered, and there has never been a complaint; that rayon yarn is purchased by denier classification or specification as 50-, 75-, 100-, 120-, 150-, 300-, and 450-denier yarn and has never been purchased or designated as 138-, 142-, 145-, or 151-denier yarn, and that the former designations have been used since the introduction of the rayon industry.

There is little, if any, dispute between the parties regarding the facts in this case, and the record fully justifies a holding that in trade and commerce, in dealing with such or similar merchandise, a trade tolerance or allowance is always expected and made between the buyer and seller and that this has been true for a long period of time. If this trade tolerance or allowance be accepted in this case, the plaintiff is entitled to prevail.

It is our view that the language of said paragraph 1301 of the Tariff Act of 1930, as modified, *supra*, is clear, plain, and unambiguous and that there is little, if any, room for construction. The line of demarcation is between yarns of rayon, weighing 150 deniers or more per length of 450 meters, and yarns of rayon, weighing less than 150 deniers per length of 450 meters. This is not a case in which there is room for the application of the rule giving force to commercial usage. Had it been the intention of the trade negotiators to make this merchandise dutiable according to the rule of commercial usage, it would have been an easy matter for them to have so stated. This they did not do.

Our views on this subject find support in a number of authorities. In *Keller & Co.* v. *United States*, T. D. 12931, G. A. 1482, the question involved was the measurement of files. It was there stated:

We find that the files are commercially known as 4-inch files, but that by actual measurement they exceed 4 inches in length.

Paragraph 168 prescribes a duty of 75 cents a dozen for files over 4 inches and under 9 inches in length. We are of the opinion that the provision is for a lineal measurement and does not refer to commercial terms.

The case of *Gerhard & Hey Co., Inc.* v. *United States*, 73 Treas. Dec. 760, T. D. 49541, involved the question of whether duty should be levied on the actual weight of the merchandise, or upon a weight established by trade custom. In holding that duty should be taken on the actual weight, this court said:

* * * The total net weight in pounds constitutes the dutiable weight. Such dutiable weight is the actual weight irrespective of any possible trade custom. See *United States* v. *Nash*, 27 Fed. Cases 75, and *In re Downing*, T. D. 14624, G. A. 2382, where the court held that the actual weight and not an arbitrary weight adopted by trade must be taken.

*Vandegrift & Co.* v. *United States*, 3 Ct. Cust. Appls. 176, T. D. 32462, involved wine which had an alcohol content in excess of 14 per centum. The variation in excess of 14 per centum was from eighteen

one-hundredths of 1 per centum to seventy-five one-hundredths of 1 per centum. It was there contended that the line of demarcation should be determined according to commercial usage, rather than by actual analysis. The court there said:

The testimony further shows that the human equation, so-called, would not amount to more than a variation of one one-hundredth or two one-hundredths of 1 per cent, so that the maxim *de minimis non curat lex* can not be applied to this case. We have a case in which there is an ascertainable excess over 14 per cent of absolute alcohol.

The only question, therefore, becomes one of law, which is whether, in view of the plain provisions of this statute, the court may treat the line of demarcation as something other or different than one ascertainable under such regulations as the Secretary of the Treasury may prescribe. We think the case is one where rules of construction need scarcely be stated or resorted to. The statute is so plain and clear in its provisions that it may be said that there is no room for construction. The line of demarcation is between wines containing 14 per cent or less of absolute alcohol and those containing more than 14 per cent of absolute alcohol. Clearly any wine that contains alcohol in quantities perceptible and ascertainable above 14 per cent comes within the classification which fixes the higher rate of duty.   *   *   *

The case is in all substantial respects analogous to that of United States *v.* Lueder (154 Fed. Rep., 1; T. D. 27918).

This is not a case in which there was room for the application of the rule giving force to commercial usage. This question was discussed in the *Bartram* case (131 Fed. Rep., 833), where a similar contention was made, but the contention was overruled on reasoning which commends itself to the court. See also Newman *v.* Arthur (109 U. S., 132); American Sugar Refining Co. *v.* United States, 1 Ct. Cust. Appls., 228; T. D. 31273).

The case of *Newman* v. *Arthur, supra* (27 L. ed. 883), deals with the question of whether the thread count in certain woven goods should be ascertained according to commercial usage or by actual count. In rejecting the commercial usage count in favor of the actual count, the Supreme Court of the United States said:

It is sought to support this argument by invoking the rule of construing the statute, applied in *Arthur* v. *Morrison*, 96 U. S. 108 [XXIV., 764], and the numerous cases there cited, that where words are used in an Act imposing duties upon imports which have acquired, by commercial use, a meaning different from their ordinary meaning, the latter may be controlled by the former if such be the apparent intent of the statute; but the application fails in the present instance because the language used is unequivocal. There is no reference in the statute, either expressly or by implication, to any commercial usage, and there is no language in it which requires for its interpretation the aid of any extrinsic circumstances. The rejected proof of the custom of merchants to rate certain descriptions of goods, as to values, by the number of threads to the square inch, as ascertained by inspection by means of a glass, throws no light whatever on the meaning of the law, because the law fixes the rate of duty by a classification based on the number of the threads in a square inch, without reference to the mode in which the count is to be made. It might be quite convenient for dealers not to count the threads, except when they could do so without unraveling, but it is pure conjecture that Congress intended to stop the count by Collectors at the same

limit. There appears to be no difficulty in counting the threads, no matter how fine the fabric, as long as the goods are plain woven; and the necessity of unraveling for the purpose of counting seems to exist only in case of twilled goods; and yet, this very Act requires a count of threads in the case of jeans, denims, drillings, bed-tickings, etc., which are twilled, and bases a difference of duty upon them according to the number of threads to the square inch so ascertained.

As early as 1893, in *R. F. Downing & Co.* v. *United States*, T. D. 14624, G. A. 2382, it was held, in dealing with a question very similar to that here involved:

* * * The U. S. weigher reports that the weight thereof "was taken with more than usual care, as in all cases when Denia raisins are found to exceed 28 pounds per box, in anticipation of complaint from the importers." The appellants do not traverse the correctness of the weigher's return, but claim that the average weight of the raisins in question is 28 pounds per box—a claim that is founded on the trade custom of accepting such a weight as the standard for similar packages of Denia raisins. The appellants would seem to have cause for complaint, as they no doubt bought and sold the merchandise at the invoice weight, namely, 28 pounds per half box. The board, however, is unable to afford them the relief asked for. The return of the U. S. weigher, who reports that he acted with unusual care in this case, was undoubtedly correct; and inasmuch as paragraph 302 imposes a duty of 2½ cents per pound on raisins in whatever manner packed, we hold that actual weight and not an arbitrary weight adopted by trade must be taken.

Plaintiff cites as supporting its contention the cases of *Two Hundred Chests of Tea*, 22 U. S., 9 Wheat. 428; *Bache* v. *United States*, 4 Treas. Dec. 625, T. D. 23168; *United States* v. *Max Mayer & Co.*, 175 Fed. 963; *Lincoln, Willey & Co.* v. *United States*, 178 Fed. 599; *United States* v. *Thomson*, 2 Ct. Cust. Appls. 76, T. D. 31630; and *United States* v. *Procter & Gamble Mfg. Co.*, 34 C. C. P. A. (Customs) 71, C. A. D. 345.

The case of *Two Hundred Chests of Tea, supra* (6 L. ed. 128), states the well-established principle that:

* * * The object of the duty laws is to raise revenue, and for this purpose to class substances according to the general usage and known denominations of trade. Whether a particular article were designated by one name or another, in the country of its origin, or whether it were a simple or mixed substance, was of no importance in the view of the legislature. It did not suppose our merchants to be naturalists, or geologists, or botanists. It applied its attention to the description of articles as they derived their appellations in our own markets, in our domestic as well as our foreign traffic. And it would have been as dangerous as useless, to attempt any other classification than that derived from the actual business of human life.

With the sound principles as stated above, we are in full agreement. However, in the above case, the question involved was the proper classification of tea, whether it was bohea tea or some other class of tea. There was no question in that case as to the weight of the tea, or whether it should pay duty on the actual weight, or upon the weight as established by commercial usage. In the instant case, no one denies the fact that the involved merchandise consists of rayon yarn, singles, and the only question before us is whether such rayon

yarn, singles, should pay duty according to its actual weight or whether it should pay duty according to its weight as shown by commercial usage. The above case, therefore, does not support the contention of the plaintiff herein.

In the *Bache* case, *supra*, it was held that the provision "not exceeding 16 by 24 inches square" covered and included pieces of glass, even though the dimension of 30 inches exceeded the stated limitation of "not exceeding 16 by 24 inches." The decision in that case states that:

* * * The word "by" must necessarily be understood to mean "multiplied into," in accordance with one of the dictionary definitions of the term (Vol. I, Century Dictionary, definition 10). The word "square" manifestly has reference only to the character of the arithmetical measure—this is, square measure, as distinguished from cubic or other kinds.

The *Lincoln, Willey* case, *supra*, involved the question of the proper amount to be allowed for tare, consisting of salt, scale, and dirt, in arriving at the weight of a barrel of "net fish." It was there shown that it was the trade custom to deliver 228 pounds of fish in their condition as taken from the hold of the vessel, including salt, scale, and dirt, as a good delivery for 200 pounds of "net fish." In the present case, there is no question of tare, consisting of anything. All of the imported merchandise here consisted of rayon yarn, singles, and nothing else. It is simply a question of what the rayon yarn, singles, weighed when imported.

In the *Procter & Gamble* case, *supra*, the question was whether or not citronella oil, containing from 6 per centum to 13.6 per centum adulterant, was dutiable as citronella oil or as a mixture, containing an essential oil. Based upon evidence that it was the trade custom to accept as a good delivery citronella oil, containing the above percentages of an adulterant, the court held the merchandise dutiable as citronella oil. The primary question in that case was the proper classification of the merchandise. In the instant case, the primary question is the weight of rayon yarn, singles, upon which duty should be levied.

Taken as a whole, we feel that the weight of the authorities bearing directly upon the question of the weight of the involved merchandise predominate in favor of the defendant herein. For the reasons stated and following what we perceive to be the weight of the authorities upon the question here involved, we find and hold that the merchandise herein does not weigh 150 deniers per length of 450 meters. It is, therefore, dutiable upon the basis of rayon yarn, singles, weighing less than 150 deniers per length of 450 meters, as classified by the collector. All claims of the plaintiff are, therefore, overruled. Judgment will be rendered accordingly.