On the record presented, we have no course other than to overrule the claim.

Before concluding this opinion, we think it appropriate to note that the briefs in the case are silent on the issue of segregation or commingling of merchandise. Nevertheless, there is found among the papers plaintiff's exhibit 20, which refers to certain declarations concerning the percentages of high and low quality limestone contained in the shipments here under protest. See transcript of testimony, pages 128–129. Compare *United States* v. *E. E. Holler,* 28 C.C.P.A. (Customs) 124, C.A.D. 133, and *United States* v. *Washburn-Crosby Co.,* 14 Ct. Cust. Appls. 243, T.D. 41874. Compare also, in this respect, *Lawder* v. *Stone,* 187 U.S. 281. However, as the issue as to commingling of merchandise does not appear to be pressed, no further reference will be made to it.

For the reasons hereinbefore expressed, all of the protest claims are overruled, and judgment will issue accordingly.

(C.D. 2305)

The A.W. Fenton Co., Inc. *v.* United States

United States Customs Court, Second Division

(Decided December 20, 1961)

*Benesch, Friedlander, Mendelson, Gnau & Coplan* (*Paul J. Gnau* of counsel) for the plaintiff.

*William H. Orrick, Jr.*, Assistant Attorney General (*Alfred A. Taylor, Jr.*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: The above two protests, which were consolidated for trial, relate to several importations of galvanized wire fencing, which were classified in paragraph 397 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 397), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, supplemented by T.D. 52820, or by the Sixth Protocol of supplementary concessions to said general agreement, 91 Treas. Dec. 150, T.D. 54108, and assessed with duty at the rate of 25 per centum or 21 per centum ad valorem, depending upon the date of entry.

Plaintiff contends that the subject merchandise should be classified in paragraph 317 of said act (19 U.S.C. § 1001, par. 317), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, as "galvanized wire fencing composed of wires not larger than twenty one-hundredths and not smaller than eight one-hundredths of one inch in diameter"; and dutiable at one-fourth of 1 cent per pound.

It was stipulated between adversary counsel that the wire in the fencing covered by protest 59/6590 measured 0.076 inch in diameter, and as to the merchandise covered by protest 60/2455, the wire measured 0.0795 inch in diameter.

The pertinent text of the statutes is here set forth—

Paragraph 397 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, *supra*:

Articles or wares not specially provided for, whether partly or wholly manufactured:

   \*      \*      \*      \*      \*      \*      \*

  Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other base metal, but not plated with platinum, gold, or silver, or colored with gold lacquer:
    Articles wholly or in chief value of lead \* \* \*

   \*      \*      \*      \*      \*      \*      \*

    All the following, if not wholly or in chief value of lead, tin, or tin plate:
      Blow torches and incandescent lamps, \* \* \*

   \*      \*      \*      \*      \*      \*      \*

      Woven wire fencing and woven wire netting, composed of wire under 0.08 but not under 0.03 inch in diameter, and coated with zinc or other metal before weaving_____ 25% ad val.

Paragraph 397 of the Tariff Act of 1930, as modified by the Sixth Protocol to said general agreement, *supra*:

Articles or ware not specially provided for, whether partly or wholly manufactured:

  \*     \*     \*     \*     \*     \*     \*

  Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

\*     \*     \*     \*     \*     \*     \*

  Not wholly or in chief value of tin or tin plate:

\*     \*     \*     \*     \*     \*     \*

   Woven wire fencing and woven wire netting, composed of wire under 0.08 but not under 0.03 inch in diameter:

    Coated with metal before weaving_____ 21% ad val.

\*     \*     \*     \*     \*     \*     \*

Paragraph 317 of said act, as modified by the general agreement, *supra*:

All galvanized wire not specially provided for, not larger than twenty one-hundredths and not smaller than eight one-hundredths of one inch in diameter, of the kind commonly used for fencing purposes, galvanized wire fencing composed of wires not larger than twenty one-hundredths and not smaller than eight one-hundredths of one inch in diameter; and all wire commonly used for baling hay or other commodities_____ ¼¢ per lb.

Plaintiff called as the only witness Ben Billinger, who, since 1944, had been vice president in charge of sales of the Gilbert & Bennett Manufacturing Co. of Georgetown, Conn., engaged in the manufacture of wire, wire fabrics, woven wire fabrics, and welded wire fabrics. As a matter of fact, Billinger had been engaged in the wire fabricating business altogether a matter of 43 years.

Although Gilbert & Bennett was not a manufacturer of chain link fencing, such as that illustrated in exhibit 1, representing the imported merchandise, Billinger testified that, prior to 1938, he was associated with the Wickwire Spencer Steel Co., which was a manufacturer of chain link fence; that he had sold that commodity; knew how it was made; and that he was well acquainted with all of the major producers of that product in the United States, stating that there were approximately 25. He was closely identified with the industry generally, and the merchants who dealt in the product, and knew all of his competitors in the field prior to the enactment of the tariff act on June 17, 1930.

The witness stated that he was familiar with the American Society For Testing Materials; that it had established a set of standards that was employed in the trade prior to June 17, 1930; that, at that time, there was a general, uniform, and definite usage in the trade with respect to tolerances in determining the diameter of wires used in the manufacture of wire fencing; that the tolerance is minus 4-thou-

sandths of an inch on all wires from 0.076 to 0.100; and that a wire "that was .076 and larger would conform to .080 specifications"; that, said the witness, was the general, uniform, and definite understanding among all manufacturers.

Although the testimony of this witness was not contradicted in any way, it cannot, for reasons which will appear below, be accepted to establish the claim of plaintiff that the wire fencing in controversy is composed of wire which, although actually measuring less than 0.08 of 1 inch in diameter is wire "not smaller than eight one-hundredths of one inch in diameter," within the meaning of paragraph 317, *supra.*

As stated in its brief "Plaintiff claims that under the commercial designation doctrine and under the undisputed evidence in this case, the term *.080" or more in diameter* as used in paragraph 317, includes the wire of .076" and .0795" in diameter involved in these cases."

In support of its claim, plaintiff relies upon the doctrine quoted in its brief from the syllabus of the Supreme Court of the United States in *Cadwalader* v. *Zeh*, 151 U.S. 171, 38 L. ed. 115, 14 S.C.R. 288, which reads as follows:

If words used in a statute imposing duties on imports had at the time of its passage a well-known signification in our trade and commerce, different from their ordinary meaning among the people, the commercial meaning must prevail, unless Congress has clearly manifested a contrary intention; and it is only when no commercial meaning is called for or proved, that the common meaning is to be adopted.

The doctrine above announced has been adopted and followed throughout the history of customs jurisprudence. It cannot, however, be applied to support the contention of plaintiff that commercial designation has the effect of recognizing, for tariff purposes, a tolerance in the measuring of galvanized wire used in the fabrication of woven wire fencing. This is one of those cases in which the excepting clause in the language above quoted "unless Congress has clearly manifested a contrary intention" operates to the disadvantage of plaintiff.

It is our considered opinion that Congress has, by its choice of words in the statutes here under consideration, clearly indicated that there is no room for the application of the rule of commercial usage. This conclusion finds support in the following judicial authorities:

In the case of *Murray Block, Temporary Administrator for Estate of Louis S. Fryer* v. *United States*, 32 Cust. Ct. 131, C.D. 1594, affirmed in *Id.* v. *Id.*, 42 C.C.P.A. (Customs) 217, C.A.D. 596, this court reviewed a number of decisions, some of which are referred to below, in which the rule giving force to commercial usage was held not to be applicable. The question presented there was whether cer-

tain rayon yarn, singles, was dutiable upon the basis of its actual weight, or upon the basis of its weight established by commercial usage.

In that case, the court cited *L.H. Keller & Co.* v. *United States*, Synopsis of Decisions, volume I, 713, T.D. 12931, G.A. 1482, decided in 1892, wherein this court, then the Board of General Appraisers, held that certain files, which were commercially known as 4-inch files, but which, by actual measurement, exceeded 4 inches in length, were held to be properly dutiable within the provision for files "over 4 inches and under 9 inches." The court said, in part:

> * * * We are of the opinion that the provision is for lineal measurement and does not refer to commercial terms.

In *Gerhard & Hey Co., Inc.* v. *United States*, 73 Treas. Dec. 760, T.D. 49541, the question involved was whether duty should be levied on the actual weight of the merchandise or upon a weight established by trade custom. In its opinion, the court said, in part:

> * * * The total net weight in pounds constitutes the dutiable weight. Such dutiable weight is the actual weight irrespective of any possible trade custom. See *United States* v. *Nash*, 27 Fed. Cases 75, and *In re Downing*, T.D. 14624, G.A. 2382, where the court held that the actual weight and not an arbitrary weight adopted by trade must be taken. * * *

In *Vandergrift & Co.* v. *United States*, 3 Ct. Cust. Appls. 176, T.D. 32462, the question for determination was whether certain wine contained less than 14 per centum of absolute alcohol. When the wine was tested, in accordance with regulations of the Treasury Department, it was ascertained to contain absolute alcohol in excess of 14 per centum. It appears from the opinion of the court that:

> * * * The excess over 14 per cent varied from eighteen one-hundredths of 1 per cent to seventy-five one-hundredths of 1 per cent, but it is claimed that this wine is a natural unfortified wine, and that a variation of eighteen one-hundredths of 1 per cent over 14 per cent did not, under the circumstances, make this dutiable as containing over 14 per cent of absolute alcohol, and this for the reason that the determination of the duty on that basis would be unreasonable; that the line of demarcation of 14 per cent should be construed commercially instead of scientifically; * * *.

Further, the court said:

> The case is in all substantial respects analogous to that of United States v. Lueder (154 Fed. Rep., 1; T.D. 27918).
>
> This is not a case in which there was room for the application of the rule giving force to commercial usage. This question was discussed in the Bartram case (131 Fed. Rep., 833), where a similar contention was made, but the contention was overruled on reasoning which commends itself to the court. See also Newman v. Arthur (109 U.S., 132); American Sugar Refining Co. v. United States (1 Ct. Cust. Appls., 228; T.D. 31273).

In *Newman* v. *Arthur*, 109 U.S. 132, 27 L. ed. 883, the question was presented whether the thread count in certain woven fabrics should be ascertained according to commercial usage or by actual count. The court rejected the commercial usage count and accepted the actual count. We quote the following from that decision:

It is sought to support this argument by invoking the rule of construing the statute, applied in *Arthur* v. *Morrison*, 96 U.S. 108 [XXIV., 764], and the numerous cases there cited, that where words are used in an Act imposing duties upon imports which have acquired, by commercial use, a meaning different from their ordinary meaning, the latter may be controlled by the former if such be the apparent intent of the statute; but the application fails in the present instance because the language used is unequivocal. There is no reference in the statute, either expressly or by implication, to any commercial usage, and there is no language in it which requires for its interpretation the aid of any extrinsic circumstances. The rejected proof of the custom of merchants to rate certain descriptions of goods, as to values, by the number of threads to the square inch, as ascertained by inspection by means of a glass, throws no light whatever on the meaning of the law, because the law fixes the rate of duty by a classification based on the number of the threads in a square inch, without reference to the mode in which the count is to be made. It might be quite convenient for dealers not to count the threads, except when they could do so without unraveling, but it is pure conjecture that Congress intended to stop the count by Collectors at the same limit. There appears to be no difficulty in counting the threads, no matter how fine the fabric, as long as the goods are plain woven; and the necessity of unraveling for the purpose of counting seems to exist only in case of twilled goods; and yet, this very Act requires a count of threads in the case of jeans, denims, drillings, bed-tickings, etc., which are twilled, and bases a difference of duty upon them according to the number of threads to the square inch so ascertained.

The impact of the cited cases compels the conclusion that, in the measurement of wire used in the manufacture of woven wire fencing, the statute contemplates that the actual measurement of the diameter of such wire shall be taken without regard to commercial usage. This is further clearly indicated by the language of the statute which expresses diameter measurements in fractions of one-hundredths of an inch.

Upon the authorities cited and for the foregoing reasons, the protests are overruled in all respects.

Judgment will issue accordingly.