NEWMAN *v.* ARTHUR, Collector.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

Argued October 24th, 1883.—Decided November 5th, 1883.

*Customs Duties—Manufactures of Cotton—Statutes.*

1. The rule that where words are used in an act imposing duties upon imports, which have acquired by commercial use a meaning different from their ordinary meaning, the latter may be controlled by the former, is not applicable when the language used in the statute is unequivocal.

2. The fact that at the date of the passage of an act imposing duties, goods of a certain kind had not been manufactured, does not withdraw them from the class to which they belong, when the language of the statute clearly and fairly includes them.

This action was brought to recover money alleged to have been illegally exacted by the collector of customs at the port of New York, and paid under protest. There was a verdict and judgment in favor of the defendant below, to reverse which this writ of error is prosecuted.

The importations were made in 1875, and consisted of cotton goods, upon which the collector assessed a duty of five and a half cents a square yard and twenty per centum ad valorem. The plaintiff, at the time of the liquidation, claimed that the goods were liable to a duty of only thirty-five per cent. ad valorem as manufactures of cotton not otherwise provided for.

It was proven on the trial that goods like those in question

were first manufactured in Manchester, England, in 1868 or 1869, they being then a new article of manufacture, and were first introduced into this country in 1869 or 1870. They have been known, since their first introduction into this country in trade and commerce, by the name of cotton Italians, and used exclusively for coat linings. The importations in question were wholly of cotton, and dyed black in the piece, after being woven, and were made in imitation of a well-known article called Italian cloth, made of wool, and used for lining woollen coats. The surface of the cotton Italians was by some process of weaving and calendering made smooth and glossy like that of the real Italians. Plain woollen goods were those in which the warp and woof threads cross each other at right angles.

Cotton Italians were not plain woven, but were twilled goods, and had upon them figures of different designs made in weaving. The cotton Italians in question had more than one hundred threads and less than two hundred threads to the square inch, counting the warp and filling, and were less in weight than five ounces to the square yard, and did not exceed in value 25 cents to a square yard. Plaintiff's counsel gave evidence tending to show that the number of threads to the square inch in plaintiff's importations could not be counted without unravelling the goods.

The plaintiff's counsel asked the plaintiff, who was duly sworn as a witness in the cause, the following question: " Are the goods bought and sold by the count of the number of threads? "

The defendant's counsel objected to the question as immaterial. The court sustained the objection, and plaintiff's counsel duly excepted.

The plaintiff's counsel then offered to prove by the witness that goods like those in question were never known in trade and commerce in this country as countable goods, or so bought and sold.

The defendant's counsel objected to the evidence as immaterial. The court sustained the objection, and plaintiff's counsel duly excepted. Plaintiff's counsel then offered to show

that prior to 1861, and ever since, there had been in trade and commerce in this country a great variety of cotton cloths known as countable goods, and which were bought and sold by the number of threads in the warp and filling, which number of threads was ascertainable by a glass and without taking the fabric to pieces.

The defendant's counsel objected to the question as immaterial. The court sustained the objection, and plaintiff's counsel duly excepted. The plaintiff's counsel then asked the witness the following question : " Was the value of cotton Italians partially or wholly determined between the manufacturer and the purchaser according to the number of threads to the square inch ? "

To this question defendant's counsel objected as immaterial. The court sustained the objection, and plaintiff's counsel duly excepted.

It was conceded that plaintiff's goods were neither cotton jeans, denims, drillings, bed-tickings, ginghams, plaids, cottonades, nor pantaloon stuff, nor goods of like description to them or either of them, nor for similar use.

Among others, not necessary here to refer to, the following instructions were requested by the counsel for the plaintiff in error, which the court refused to give, and to which exception was duly taken, viz :

" 3d. That if the number of threads to the square inch in plaintiff's goods, counting the warp and filling, cannot be counted without taking the goods to pieces, then the plaintiff is entitled to recover.

" 5th. That cotton Italians, being a new manufacture, and unknown here and abroad when the act of 1864 was passed, they were not specifically enumerated, and the presumption, until rebutted, is, that they come under the general provision of manufactures not otherwise provided for."

*Mr. Edwin B. Smith* for the plaintiff in error.

Congress *could not* have intended, at the date of the enactment, to impose the duty exacted from the plaintiff upon this article *specifically,* because it then had no existence ; it could

not have been intended to embrace it within the *general terms*, because it had not the distinctive trait by which the goods covered by the act at its date are known, distinguished, bought, sold and valued.

Congress did not mean to subject to this " countable " clause every article of cotton manufacture of which, by cutting out a square inch, the number of threads constituting the warp and woof of that area could be counted; but only those articles in which the threads *were* counted in ordinary mercantile transactions therein, and which could be counted by methods practised by the trade.   Thus in *Barlow* v. *United States*, 7 Peters, 404–9, a restricted meaning was given to the designation " refined sugars ; " and so in multitudinous cases not necessary to be individually specified.

*Mr. Solicitor General* for the defendant.

Mr. Justice Matthews delivered the opinion of the court.

After reciting the facts as above stated, he continued :

The provisions of the law which govern the case are contained in section 2504 Revised Statutes, being schedule A, cotton and cotton goods, and are as follows :

" 1. Sec. 2504. On all manufactures of cotton (except jeans, denims, drillings, bed-tickings, ginghams, plaids, cottonades, pantaloon stuff, and goods of like description), not bleached, colored, stained, painted, or printed, and not exceeding one hundred threads to the square inch, counting the warp and filling, and exceeding in weight five ounces per square yard, five cents per square yard ; if bleached, five cents and a half per square yard ; if colored, stained, painted, or printed, five cents and a half per square yard, and, in addition thereto, ten per centum ad valorem.

" 2. On finer and lighter goods of like description not exceeding two hundred threads to the square inch, counting the warp and filling, unbleached, five cents per square yard ; if bleached, five and a half cents per square yard ; if colored, stained, painted, or printed, five and a half cents per square yard, and, in addition thereto, twenty per centum ad valorem.

" 3. On goods of like description, exceeding two hundred threads to the square inch, counting the warp and filling, unbleached, five cents per square yard ; if bleached, five and a half cents per square yard ; if colored, stained, painted, or printed, five and a half cents per square yard, and, in addition thereto, twenty per centum ad valorem.

" 4. On cotton jeans, denims, drillings, bed-tickings, ginghams, plaids, cottonades, pantaloon stuffs, and goods of like description, or for similar use, if unbleached, and not exceeding one hundred threads to the square inch, counting the warp and filling, and exceeding five ounces to the square yard, six cents per square yard ; if bleached, six cents and a half per square yard ; if colored, stained, painted, or printed, six cents and a half per square yard, and, in addition thereto, ten per centum ad valorem.

" 5. On finer or lighter goods of like description, not exceeding two hundred threads to the square inch, counting the warp and filling, if unbleached, six cents per square yard ; if bleached, six and a half cents per square yard ; if colored, stained, painted, or printed, six and a half cents per square yard, and in addition thereto, fifteen per centum ad valorem.

" 6. On goods of lighter description, exceeding two hundred threads to the square inch, counting the warp and filling, if unbleached, seven cents per square yard ; if bleached, seven and a half cents per square yard ; if colored, stained, painted, or printed, seven and a half cents per square yard, and in addition thereto, fifteen per centum ad valorem : *Provided*, That upon all plain woven cotton goods, not included in the foregoing schedule, unbleached, valued at over sixteen cents per square yard ; bleached, valued at over twenty cents per square yard ; colored, valued at over twenty-five cents per square yard, and cotton jeans, denims, and drillings, unbleached, valued at over twenty cents per square yard, and all other cotton goods of every description, the value of which shall exceed twenty-five cents per square yard, there shall be levied, collected, and paid a duty of thirty-five per centum ad valorem : *And provided further,* That no cotton goods having more than two hundred threads to the square inch, counting the warp and filling, shall be admitted to a less rate of duty than is provided for goods which are of that number of threads."

" 12. . . . and all other manufactures of cotton, not other-wise provided for, thirty-five per centum ad valorem."

The contention of the plaintiff in error now relied on is, in substance, that the goods in question are not embraced in the provisions of the statute applicable to "manufactures of cotton," described and classed by the number of threads to the square inch, because that description had reference only to goods so described and classed by mercantile usage in dealings between buyers and sellers, where the threads could be counted by the aid of a glass, whereas, the goods in question, as it must be assumed from the offers of proof which were rejected, were not dealt in by manufacturers and merchants according to any such usage, and could not be, because the threads in a square inch could not be counted, except by unravelling the fabric for that purpose; and it is therefore argued, that as the goods in question were of a new manufacture, not known at the date of the passage of the act, they cannot be considered as within the specified enumeration of the statute, and the appropriate duty must be determined by the final clause, embracing " all other manufactures of cotton not otherwise provided for." The claim is, in the language of counsel making it, that:

" Congress did not mean to subject to this 'countable' clause every article of cotton manufacture of which, by cutting out a square inch, the number of threads constituting the warp and woof of that area *could be counted;* but only those articles in which the threads *were counted* in ordinary mercantile transactions therein, and which could be counted by methods practised by the trade."

It is sought to support this argument by invoking the rule of construing the statute applied in *Arthur* v. *Morrison,* 96 U. S. 108, and the numerous cases there cited, that where words are used in an act imposing duties upon imports, which have acquired, by commercial use, a meaning different from their ordinary meaning, the latter may be controlled by the former if such be the apparent intent of the statute; but the application fails in the present instance because the language used is une-

quivocal.   There is no reference in the statute, either expressly
or by implication, to any commercial usage, and there is no
language in it which requires for its interpretation the aid of
any extrinsic circumstances.   The rejected proof of the custom
of merchants to rate certain descriptions of goods, as to values,
by the number of threads to the square inch, as ascertained by
inspection by means of a glass, throws no light whatever on
the meaning of the law, because the law fixes the rate of duty
by a classification based on the number of the threads in a
square inch, without reference to the mode in which the count
is to be made.   It might be quite convenient for dealers not to
count the threads, except when they could do so without un-
ravelling, but it is pure conjecture that Congress intended to
stop the count by collectors at the same limit.   There appears
to be no difficulty in counting threads, no matter how fine the
fabric, as long as the goods are plain woven ; and the necessity
of unravelling for the purpose of counting seems to exist only
in case of twilled goods ; and yet, this very act requires a count
of threads in the case of jeans, denims, drillings, bed-tickings,
etc., which are twilled, and bases a difference of duty upon them
according to the number of threads to the square inch so ascer-
tained.

The fact that at the date of the passage of the act goods of
the kind in question had not been manufactured, cannot with-
draw them from the class to which they belong, as described in
the statute, where, as in the present case, the language fairly
and clearly includes them.

There is no error in the record, and the judgment is accord-
ingly                                                     *Affirmed.*