## HEDDEN *v.* ROBERTSON.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 212. Argued January 25, 1894. — Decided February 5, 1894.

Woven cotton cloth, the groundwork of which was uniform, and upon which were figures or patterns, woven into it by means of a Jacquard attachment contemporaneously with the weaving of the fabric, and which was known as Madras mull, being imported into the United States in 1886, became subject to the specific duties imposed by Schedule I (paragraphs 319, 320, 321 in the customs enumeration) of the tariff act of March 3, 1883, c. 121, 22 Stat. 488, estimated by the number of threads to the square inch, and not to the *ad valorem* duty imposed by the same schedule on manufactures of cotton not specially enumerated.

THIS was an action at law against the collector at the port of New York, to recover duties alleged to have been illegally imposed upon importations of cotton cloth. Under direction of the court the jury found a verdict for the plaintiff, on which judgment was entered. To that judgment the defendant sued out this writ of error. The case is stated in the opinion.

*Mr. Assistant Attorney General Whitney* for plaintiff in error.

*Mr. Edwin B. Smith* for defendant in error.

Mr. Justice Jackson delivered the opinion of the court.

This was an action brought by William Robertson, the defendant in error, in the United States Circuit Court for the Southern District of New York, to recover from the plaintiff in error, Edward L. Hedden, collector of customs at the port of New York, the sum of $1016.34, alleged to have been illegally exacted in excess of lawful duties on a number of importations of cotton cloths brought into the port of New York in the year 1886 by the defendant in error.

The alleged illegal duties were levied by the collector under the provisions of Schedule I, paragraphs 319, 320, and 321, of the tariff act of March 3, 1883, c. 121, 22 Stat. 483. These paragraphs are similar, so far as concerns the present question, and the language of 320 alone is necessary to be quoted. It reads as follows:

"On all cotton cloth, not bleached, dyed, colored, stained, painted, or printed, exceeding one hundred and not exceeding two hundred threads to the square inch, counting the warp and filling, three cents per square yard; if bleached, four cents per square yard; if dyed, colored, stained, painted, or printed, five cents per square yard: *Provided*, That on all cotton cloth not exceeding two hundred threads to the square inch, counting the warp and filling, not bleached, dyed, colored, stained, painted, or printed, valued at over eight cents per square yard; bleached, valued at over ten cents per square yard; dyed, colored, stained, painted, or printed, valued at over thirteen cents per square yard, there shall be levied, collected, and paid a duty of forty per centum *ad valorem.*"

The defendant in error claimed that the cotton cloth imported by him should not be classified under the provisions of either of these paragraphs, but that the goods were dutiable only under paragraph 324, which reads as follows:

"Cotton cords, braids, gimps, galloons, webbing, goring, suspenders, braces, and all manufactures of cotton, not spe-

cially enumerated or provided for in this act, and corsets, of whatever material composed, thirty-five per centum *ad valorem.*"

It was shown by the evidence that the difference in the rate of duty exacted by the collector and that claimed by the importer was $983.93.

The goods in question were called Madras mull, and consisted of woven cotton cloth, the groundwork of which was uniform, and upon which were figures or patterns woven contemporaneously with the weaving of the fabric. These figures or patterns were woven into the groundwork by means of a machine called a Jacquard attachment. When the fabric was taken from the loom it was not in a finished state. The threads forming the weft or filling, furnished by the Jacquard attachment — used entirely for the figures or patterns — loosely connected the figures in a horizontal line, and were raised above the smooth service of the groundwork. In order to bring out the figure or pattern more distinctly, the whole fabric was run through a clipping machine two or more times, and the loose threads, together with the raised parts of the pattern, were cut off, so as to make the fabric smooth and even. After stating the method of weaving the cloth, and thereafter clipping it, so as to bring out the figures, the manufacturer, Nicol Paton Brown, a witness of the plaintiff below, thus described the fabric:

"In the groundwork of the fabric as distinguished from the figure or pattern the number of threads to the square inch is uniform throughout the fabric, but when the fabric leaves the loom and before it goes into the clipping machine the count of the fabric as a whole differs from the count after it has been passed through the clipping machine. Before the fabric is put in the clipping machine the number of threads to the square inch in the groundwork of the fabric as distinguished from the colored threads which form the figure is uniform throughout the fabric, so that if in any of these fabrics a square inch is selected for the purpose of the count, in which there is no figure or part of a figure, the number of threads in that square inch will be the number of threads in any

square inch of the groundwork of the fabric. The terms weft and filling are synonymous, and I have so used them in my testimony. The Jacquard machine gives the indication to the threads of the warp which forms the figure, but the loom is instrumental in leaving both the groundwork and the figure. . . . The weft threads make the figure, but require to be woven in by the warp in order to retain them in position in the fabric when being passed through the clipping machine after being woven."

The warp threads, which lock into the weft threads, are continuous from end to end throughout the fabric, but the weft threads, after the fabric has gone through the clipping process, do not extend continuously from side to side or selvage to selvage.

The number of threads to the square inch are counted by the use of a magnifying glass. In the goods in question the number of threads to the square inch was determined by counting the threads in a square inch of the groundwork alone, and there is no dispute that the groundwork of the cloth, independently of the figures, contained the number of threads designated in the provision of the statute which warranted the duty imposed thereon by the collector.

The defendant in error claimed, however, that the goods imported, although composed of cotton and constituting cotton cloth, were dutiable only at the rate of thirty-five per centum *ad valorem* as "manufactures of cotton not specially enumerated and provided for."

The duties imposed by the collector were paid under protest, and the importer thereafter made due and timely appeal to the Secretary of the Treasury, who affirmed the decision of the collector. The importer within the time prescribed by law brought his action against the collector to recover the duties which he claimed to have paid in excess of the amount required by the tariff act of 1883. His complaint set out the fact of the payment of the duties, his protest, and the adverse decision of the Secretary of the Treasury, and that the sum alleged to have been improperly exacted from him had never been repaid.

The answer of the collector denied that the plaintiff had paid anything in excess of the proper and lawful duty.

Upon the hearing of the cause the court directed the jury to return a verdict for the plaintiff below for the sum of $983.93; upon which verdict the court rendered a judgment for that amount, with interest and costs, aggregating the amount of $1044.06. 40 Fed. Rep. 322. From this judgment the defendant below prosecuted his present writ of error.

The court below, while conceding that the goods in question were cotton cloth, within the meaning of that term, held that they did not come within the countable clause of paragraphs 319, 320, 321 of Schedule I, above quoted, for the reason that those provisions of the tariff act of 1883 implied that the cloth should be homogeneous, so that the number of threads per square inch will not differ in different parts of the fabric; and inasmuch as this was not true in reference to the figures of the fabric, the goods did not come within the meaning of the above-mentioned paragraphs, but came within the provision of paragraph 324 of the same schedule relating to "manufactures of cotton not specially enumerated or provided for."

We think this was not a correct view of the subject. The provisions in question are substantially the same as those of Schedule A of cotton and cotton goods, in section 2504, Revised Statutes, which reads as follows:

"SEC. 2504. On all manufactures of cotton, except jeans, denims, drillings, bed-tickings, ginghams, plaids, cottonades, pantaloon stuff, and goods of like description, not bleached, colored, stained, painted, or printed, and not exceeding one hundred threads to the square inch, counting the warp and filling, and exceeding in weight five ounces per square yard; if bleached, five cents and a half per square yard; if colored, stained, painted, or printed, five cents and a half per square yard, and in addition thereto, ten per centum ad valorem.

"On finer and lighter goods of like description, not exceeding two hundred threads to the square inch, counting the warp and filling, unbleached, five cents per yard; if bleached, five and a half cents per square yard; if colored, stained,

painted, or printed, five and a half cents per square yard, and, in addition thereto, twenty per centum *ad valorem.*"

"Cotton braids, insertings, lace, trimming, or bobbinet, and all other manufactures of cotton, not otherwise provided for, thirty-five per centum *ad valorem.*"

In *Newman* v. *Arthur*, 109 U. S. 132, 138, these provisions just quoted came before the court for construction and application. The imported goods were cotton Italians, which were twilled and had upon them different figures and designs made in the weaving. The goods had more than one hundred, and less than two hundred, threads to the square inch, counting the warp and filling. It was contended in that case, as in this, that the goods were not dutiable under the countable clause of the statute, but were dutiable as "manufactures of cotton, not otherwise provided for." This court held, however, that the goods were dutiable under the countable clause, although the number of threads constituting the warp and woof could only be counted by cutting out a square inch of the cloth and counting the unravelled threads. It was sought to show by proof that it was not the custom of merchants to buy and sell such goods, or to determine the value thereof, partially or wholly, by the number of threads to the square inch, as ascertained by means of a magnifying glass or otherwise; but Mr. Justice Matthews, speaking for the court, said that such custom would throw no light whatever on the meaning of the law, "because the law fixes the rate of duty by a classification based on the number of threads in a square inch, without reference to the mode in which the count is to be made. It might be quite convenient for dealers not to count the threads except when they could do so without unravelling, but it is a pure conjecture that Congress intended so to stop the count by collectors at the same limit. There appears to be no difficulty in counting threads no matter how fine the fabric, as long as the goods are plain woven; and the necessity of unravelling for the purpose of counting seems to exist only in case of twilled goods; and yet this very act requires a count of threads in the case of jeans, denims, drillings, bed-tickings, etc., which are twilled, and bases a differ-

ence of duty upon them according to the number of threads to the square inch so ascertained."

There is no such substantial difference between the act construed in Newman v. Arthur and the provisions of the act of 1883, now under consideration, as would authorize the court to place upon the latter a different construction from that placed upon the former. The practice of determining the number of threads in both cases was the same, and the acts are so nearly alike in their provisions that a different interpretation cannot be given by this court to the last act, which contains no substantial change in phraseology. McDonald v. Hovey, 110 U. S. 620.

The provisions of the act of 1883, like the provisions of section 2504, fixes the rate of duty by a classification, based on the number of threads in a square inch of cotton cloth, without reference to the mode by which the count shall be made, and without regard to the incidental ornamentation of the fabric.

We have no authority, where the duty is thus specifically declared, to make an exception, based upon something that might be added to the cloth in the way of figures or patterns placed upon the groundwork of the fabric. The groundwork being cotton cloth, within the terms and provisions of the statute, and the threads thereof being countable, the goods were dutiable, by the express language of the statute, at the rate which was exacted by the collector from the defendant in error.

The mode of weaving the goods and of subsequently clipping the fabric so as to bring out the figures, even though that operation did pare the weft or filling at the figures, does not change the character of the fabric so as to make it a manufacture of " cotton, not specially enumerated or provided for." In other words, the ornamentation placed upon the groundwork of the fabric does not change its character as cotton cloth, subject to the countable clause of the statute, and dutiable under paragraphs 319, 320, and 321 of the act of 1883.

We are, therefore, of opinion that there was error in the action of the court below, and that the undisputed facts of

the case establish that a verdict should have been directed for the defendant.

> *The judgment of the court below is, therefore, reversed, and the case remanded for further proceedings in conformity with this opinion.*

Mr. Justice Brewer did not hear the argument in this case, and took no part in the decision of the court.