UNITED STATES v. FARBENFABRIKEN OF ELBERFELD Co. (No. 944).[1]

TETRAPOL SOAP.

> The question is not one of commercial designation; it is, simply, whether the presence of 17 per cent in volume of alcohol in the mixture serves to make the classification of the merchandise as a soap improper.   "Soap" is not limited in common understanding to solid combinations, but has been broadened in meaning to include substances liquid in form.   The merchandise was properly held dutiable not as a chemical mixture, but as "other soaps not specially provided for" under paragraph 69, tariff act of 1909.

United States Court of Customs Appeals, October 28, 1912.

APPEAL from Board of United States General Appraisers, Abstract 28692 (T.D. 32560).

[Affirmed.]

*William L. Wemple*, Assistant Attorney General (*Charles D. Lawrence*, special attorney, of counsel; *Charles Duane Baker*, special attorney, on the brief), for the United States.

*Curie, Smith & Maxwell* (*Thomas M. Lane* of counsel) for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The merchandise is composed of potash and fatty acids with an addition of alcohol to the amount of 17 per cent by volume.   This

---

[1] Reported in T. D. 32911 (23 Treas. Dec., 331).

addition of alcohol produces a liquid substance.   The witnesses, all of whom were called by the importer, called the merchandise a liquid soap, with the exception that. the Government chemist characterized it as an alcoholic solution of soap.   The name given to this liquid by the importer is Tetrapol benzine soap.   It was not known to the commerce of this country prior to the passage of the tariff act of 1909, and but two importations, have since been made.

The merchandise was assessed for duty as a chemical mixture, alcoholic, at 55 cents per pound under paragraph 3 of the tariff act of 1909, which reads as follows:

3. Alkalies, alkaloids, distilled oils, essential oils, expressed oils, rendered oils, and all combinations of the foregoing, and all chemical compounds, mixtures and salts, and all greases, not specially provided for in this section, twenty-five per centum ad valorem; chemical compounds, mixtures and salts containing alcohol or in the preparation of which alcohol is used, and not specially provided for in this section, fifty-five cents per pound, but in no case shall any of the foregoing pay less than twenty-five per centum ad valorem.

It is claimed by the importer that it should be assessed under that part of paragraph 69 of the same act which refers to "all other soaps." The material part of the paragraph is as follows:.

69. Castile soap,   *   *   *   medicinal or medicated soaps,   *   *   *   fancy or perfumed toilet soaps,   *   *   *; all other soaps not specially provided for in this section, twenty per centum ad valorem.

This case was heard before the Board of General Appraisers in December, 1910.   The importer at that time introduced but little evidence and the protest was overruled.   A rehearing was granted by the board and additional testimony was offered by the importer. Thereupon the board reversed its former finding and sustained the protest.

The contention is made here on behalf of the Government that the merchandise was not commercially known as a soap when the tariff act of 1909 went into effect or since, and therefore the board committed error in sustaining the protest in that, under the evidence, the importer failed to bring itself within the decisions entitling it to relief.

It is urged, and the record appears to so show, that prior to the passage of the act of 1909 no liquid soap similar to the article involved here was known in the commerce of the country, and it is said that in order to come within the terms of the act that a novel article of merchandise subsequently introduced must acquire an established trade.name which brings it within the paragraph claimed.

The cases cited and relied upon by the Government in this connection, as we understand them, so far as they are germane to the issue, hold that when it is attempted to classify an article by its commercial designation only, and regardless of the facts as to its materials or composition, it must be shown that the commercial

designation exists. There is no proof of commercial designation in this case, as, from what already appears, such designation was not, and, in the nature of the case, could not be shown.

But it seems to us that the determination of this case is not concluded by this issue. In its last analysis the real question is whether the presence of 17 per cent in volume of alcohol takes the importation out of the classification of soap. It is agreed that but for the presence of the alcohol the merchandise answers the call of the definition of soap, which concededly is "any compound formed by the union of a fatty acid with a base" and used as a detergent. It is conceded to be a detergent, used in dry cleaning, and the uncontradicted evidence shows that the presence of the alcohol makes the merchandise more effective in cleaning and more easily soluble in benzine, with which it is designed to be used in the same way as ordinary solid benzine soap, and it appears from the evidence that benzine soap is in common use and has been so for more than 10 years. The record shows that ordinary solid benzine soap sells for 20 cents per pound or less, and because the merchandise at bar is assessed at 55 cents per pound, it is impracticable, as a commercial proposition, to import it.

The Government in its argument strongly urges that the soap of commerce is not a liquid or fluid soap, and points to the fact that seems to be supported by reference thereto that in the various lexicons and encyclopedias which treat upon the subject of soap there is no mention made of a liquid or fluid soap, and no reference to such an article as a benzine or Tetrapol benzine soap. On the other hand, it is to-day common knowledge that there is an article used for toilet purposes and known as liquid soap which not only fills all the requirements of solid soap, but is, in addition, more sanitary, as it minimizes the liability of diseases being transmitted by one user to another.

In June, 1899 (T. D. 21234), it was held by the board that a yellow liquid imported in glass bottles and labeled as a glycerin soap was a soap and dutiable as such. The evidence in that case satisfied the board that the article in question was commercially known as soap prior to the passage of the tariff act of 1897, paragraph 72 of which, the predecessor of the paragraph involved here, was under consideration.

In 1904 the board held (T. D. 25912) that an article known as benzine soap, evidently very like what is referred to by that name in the record before us, was dutiable as soap.

We think from what has already been said it is clear that the term "soap" is not limited in common understanding to solid combinations of a fatty solid with a base used as a detergent, but has been broadened to include soaps in liquid form; that under the phraseology of paragraph 69 of the act of 1909, when the article is composed of ingredients which form soap and is used as a detergent, unless commercial designation is made an issue, the question is not whether

it is commercially known as a soap, but whether it is in fact a soap or not. If it is, it should be classified under the paragraph..

It was said by the Supreme Court in Newman *v.* Arthur (109 U. S., 132):

The fact that at the date of the passage of the act goods of the kind in question had not been manufactured can not withdraw them from the class to which they belong as described in the statute, where, as in the present case, the language fairly and clearly includes them.

Now, in the case at bar the importer's claim in substance is that the merchandise is soap in fact and no question of commercial designation is made. The statute applies to soap in the common meaning of the word unless a different commercial meaning is shown, and, as we have said, that is not attempted here.

The Board of General Appraisers has found the merchandise to be soap in fact. We are clearly of opinion that the finding was right, and its judgment is hereby *affirmed.*