(C. D. 1538)

C. J. TOWER & SONS *v.* UNITED STATES

United States Customs Court, First Division

(Decided June 25, 1953)

*Reavill, Jenswold & Neimeyer* (*R. B. Reavill* of counsel); *Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel), associate counsel; for the plaintiff.
*Warren E. Burger,* Assistant Attorney General (*William J. Vitale,* special attorney), for the defendant.

Before OLIVER and MOLLISON, Judges

MOLLISON, Judge: Certain lumber was imported from Canada and entered for consumption at the port of Buffalo, N. Y., on various

dates between June 12, 1950, and October 9, 1950. Part of the lumber involved in the shipments was invoiced as " 'Nipigon' Western White Spruce" and was assessed with duty at the rate of 25 cents per thousand feet, board measure, under the provision for spruce lumber in paragraph 401 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, reported in T. D. 51802, plus 75 cents per thousand feet, board measure, under the provision for spruce lumber in section 3424 (a) of the Internal Revenue Code (26 U. S. C.), as modified by the said General Agreement on Tariffs and Trade.

The protest herein is limited to that portion of the shipments described as Western white spruce, and is directed against the action of the collector of customs in imposing import tax or duty under the provisions of section 3424 (a), as modified, *supra*, the claim being that the said lumber was, in fact, Western white spruce lumber which was entitled to exemption from the said tax or duty by reason of the following language contained in section 3424 (a), as modified:

The tax imposed by this subsection shall not apply to lumber of * * * Western white spruce.

No claim is made with respect to the assessment of duty under paragraph 401, as modified, *supra*.

The record before us consists of certain testimonial evidence and documentary exhibits introduced at a hearing held at the port of Buffalo, N. Y., in the instant case, together with the records in the cases of *F. E. Macartney* v. *United States*, protest 150094–K, and *Victor W. Davis, Jr., Administrator, etc.* v. *United States*, 35 C. C. P. A. (Customs) 79, C. A. D. 374. It was agreed by counsel for the respective parties that the lumber involved in the *Macartney* case was the same, in all material respects, as the lumber involved herein.

The *Davis* case arose by protest in this court against the action of the collector of customs at the port of Duluth, similar to the action of the collector herein, imposing tax or duty under the provisions of section 3424 (a) of the Internal Revenue Code upon spruce lumber originating about Kenora, in the western part of the Province of Ontario, Canada. The instant case involves spruce lumber originating in the Lake Nipigon area, which is in what might be termed the west central part of the Province of Ontario.

In both this court and our appellate court it was held in the *Davis* case that the term "Western white spruce," as used in the Internal Revenue Code, *supra*, is an *eo nomine* designation, that is to say, it is the designation of certain lumber by name and not by description. This followed from a consideration of certain legislative history which indicated that Congress intended the term "Western white spruce" to be a designation of a particular kind of lumber obtained from trees known by that name and grown in Canada, not only in the western provinces, but also elsewhere.

The chief effort of the plaintiff in the *Davis* case had been to establish that the imported lumber there involved was indistinguishable, physically and botanically, from Western white spruce, but, as stated by our appellate court in its opinion, there was "nothing in the record to establish that the imported merchandise is what was evidently intended by the Congress to be regarded as 'Western white spruce'." On the contrary, the record indicated that at and prior to the effective date of the Revenue Act of 1938, in section 704 (c) of which the exception in favor of Western white spruce lumber first appeared, lumber such as that involved in the *Davis* case from Western Ontario had not been known or sold as Western white spruce, but as white spruce.

The lumber involved in the *Macartney* case, the record in which was incorporated as part of the record herein by consent and which lumber is agreed to be the same, in all material respects, as the lumber involved herein, stands in a somewhat different factual situation from that which was the subject of the *Davis* case. It clearly appears from the record that prior to 1940 the forest on the west side of Lake Nipigon, Ontario, from whence came the lumber in the *Macartney* case and the lumber here involved, was a virgin forest. It also clearly appears that ever since lumbering operations began in that region the product was known and sold in the United States as Western white spruce, and, as indicative of the fact that this was not merely the adoption of an advantageous name for the lumber, there is ample uncontradicted evidence that the lumber so known and sold and originating in the Lake Nipigon region was used for the same purposes and had the same physical properties as Western white spruce lumber originating in the province of Manitoba, and was, in fact, indistinguishable therefrom.

A basic factor in the decision in the *Davis* case was undisputed evidence that white spruce lumber from Ontario had not been known and sold in the United States as Western white spruce prior to the effective date of the Revenue Act of 1938. Consequently, the white spruce lumber involved in the *Davis* case, which it appeared had come from stands or forests which were subjected to lumbering operations prior to the effective date of the Revenue Act of 1938, in which the exception in favor of Western white spruce lumber first appeared, was of a class of merchandise the existence of which was known to commerce prior to that time as other than Western white spruce lumber. When Congress singled out Western white spruce lumber from all other spruce lumber as that which should receive the benefit of the exemption, it obviously intended the exemption to apply to lumber which was of a class which then bore the name "Western white spruce."

The evidence in the *Davis* case established that the lumber product of the forests of Ontario, which were at that time producing white spruce, was not known or sold in the United States as "Western white

spruce" but as "white spruce." Consequently, none of the product of such forests was within the contemplation of Congress when it provided an exemption from tax or duty in the case of Western white spruce.

But this cannot be said of the product of the forests of Ontario which at the time of the passage of the Revenue Act of 1938 had not been subjected to lumbering operations. As was pointed out in the majority opinion in the *Davis* case in this court, and in the opinion of our appellate court, the legislative history of the Revenue Act of 1938 reveals that Congress eliminated from the provision for the exemption of lumber of Western white spruce the geographical restriction which had been in the legislation as introduced limiting the exemption to Western white spruce grown in Manitoba, Saskatchewan, or Alberta. The proponent of the amendment to strike the territorial restriction from the provision stated that the purpose of the amendment was to make "this provision general in application," it having been found that Western white spruce was grown in other places besides Manitoba, Saskatchewan, and Alberta.

The situation was, therefore, that while Congress clearly intended to apply the exemption from tax or duty under the revenue act to lumber which at the time of the passage of the act bore the name "Western white spruce," it employed language designed to make the provision general in scope and not limited to lumber originating in specified areas. As hereinbefore stated, white spruce lumber originating in forests in the Province of Ontario which were in operation at the time of the passage of the revenue act, which lumber was known and sold in the United States as "white spruce," was not within the letter of the statute, and, in view of the legislative history, the statute could not be construed to include it.

We have no means of knowing whether Congress at that time had in contemplation the possibility of the application of the exemption to lumber of forests of Ontario which should thereafter be opened to lumbering operations, but it is certain that, in view of the elimination of the territorial restriction, Congress did not rule out that possibility. Further, it seems clear that Congress adopted language which fairly brings within the scope of the exemption lumber from forests of Ontario which, while not known to commerce at the time of the passage of the Revenue Act of 1938, nevertheless, in the future, should possess the name and character of Western white spruce.

In the case of *Barr* v. *United States*, 324 U. S. 83, at page 90, very apt language was employed by the majority in connection with a situation not unlike, in principle, that at bar:

We may assume that the dual or multiple exchange rates which have emerged were not in contemplation when the 1930 Act was passed. As we have noted, they are parts of rather recent measures for the control and restriction of foreign exchange and export transactions. *But if Congress has made a choice of language*

*which fairly brings a given situation within a statute, it is unimportant that the particular application may not have been contemplated by the legislators.* [Italics added.]

Similarly, in the case of *Newman* v. *Arthur*, 109 U. S. 132, 27 L. ed. 883, it was said:

The fact that, at the date of the passage of the Act, goods of the kind in question had not been manufactured, cannot withdraw them from the class to which they belong, as described in the statute, where, as in the present case the language fairly and clearly includes them.

We are therefore constrained to hold that the "Nipigon" Western white spruce here involved is fairly included within the term "Western white spruce," as used in section 3424 (a), *supra,* and is consequently entitled to exemption from the tax or duty imposed under that section.

It should be noted that, at the trial of the issue in both this case and the *Macartney* case, plaintiff offered other evidence along different lines and on different theories in support of this contention. As the effect of such evidence, if it should be determined to have probative force, would merely be cumulative, since we have, on the ground stated hereinabove, determined the issue in favor of plaintiff's claim, we find it unnecessary to discuss the said evidence here. However, we deem it proper to say that our decision herein should not be considered to be precedent based upon any consideration of the said evidence, or upon any ground save that hereinbefore indicated.

Judgment will therefore issue sustaining the protest claim for entry free of the tax or duty imposed under section 3424 (a) of the Internal Revenue Code as to the items described on the invoices as " 'Nipigon' Western White Spruce."