LANSTON INDUSTRIES, INC. v. UNITED STATES    (No. 5089)*

United States Court of Customs and Patent Appeals, August 2, 1962

*Allerton deC. Tompkins*, for appellant.

*William H. Orrick, Jr.*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Richard H. Welsh*, trial attorney, of counsel) for the United States.

[Oral argument February 9, 1962, by Mr. Tompkins and Mr. FitzGibbon]

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

RICH, Judge, delivered the opinion of the court:

Lanston Industries, Inc., appeals from the judgment of the United States Customs Court, First Division (Abstract 65690), on its protest to the classification of certain "Monophoto machines" and parts therefor which it imported.

The following paragraphs of the Tariff Act of 1930 are involved: Paragraph 1551:

Photographic cameras and parts thereof, not specially provided for * * *.

---

* C.A.D. 807.

[1] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell*, pursuant to provisions of Section 294(d), Title 28, United States Code.

Paragraph 353:

* * * articles having as an essential feature an electrical element or device * * *; all the foregoing, and parts thereof, finished or unfinished, wholly or in chief value of metal, and not specially provided for, * * *.

Paragraph 1643:

* * * all typesetting machines, * * *; all the foregoing whether in whole or in part, including repair parts.

A descriptive pamphlet in evidence denotes the imported machines individually as a " 'Monophoto' Filmsetting Machine." Each weighs about 1200 pounds, occupies a floor space about 5 feet by 5 feet, and, as we were advised at oral argument, costs over $23,000. These machines are used in the printing industry and constitute one of the two elements of a typesetting machine system. The name "Monophoto" is indicative of a very close relationship which exists between the imported machines and a well-known typesetting machine known as the "Monotype." Funk & Wagnalls New Standard Dictionary (1913) gives a definition of "Monotype" which is as follows:

3. *Print.* A machine, operated automatically by means of a perforated tape guide; which casts and sets single types or logotypes. See COMPOSING MACHINE.

Under the definition of "composing" the same dictionary says:

c.—machine, *n. Print.* A machine with keyboard which is used in automatically setting type or matrices from which type is cast. See GRAPHOTYPE; LINOTYPE; MONOLINE; MONOTYPE; TYPOGRAPH.—c.—room, *n.* The room in a printing-office where the type is set.

Illustrating this definition is a picture of a "Monotype Composing-machine" which is the machine with the keyboard and paper tape punching apparatus on which is made the tape guide which controls the Monotype machine. As the record here makes clear, the complete Monotype typesetting system comprises the keyboard-operated tape-punching apparatus and the type-casting machine, the operation of which is controlled by the punched tape. In the Monotype system, the actual typecasting, which is done by injecting molten metal into type matrices in a machine driven by an electric motor, is controlled by the punched paper tape much as the mechanical action of a player piano is controlled by the perforated paper music roll. This kind of typecasting machine is referred to in the record as a "hot metal" machine.

One of the characteristics of the Monotype typesetting machine is that it contains a relatively small, flat, rectangular matrix case holding the molds wherein are the characters of the type font of the type to be cast. Selection of characters, under the control of the paper tape, is done by moving the matrix case in two directions, forward and back and right and left, into selected positions over a hot metal

casting mechanism. The output of the machine, which runs automatically, is a tray or galley of set or composed metal type, the individual letters being arranged to form words in justified lines and the lines being arranged in columns. The printer can utilize this set metal type in various ways. It can be used directly for the final printing or, according to procedures well-known in the printing trade, a "repro-proof," which is a carefully made print from the inked type, can be photographed as part of the process of making various kinds of printing plates from which the actual printing is done.

It appears to be assumed by the Government that a Monotype machine is a "typesetting machine" within the meaning of paragraph 1643, which provides for entry of such machines free of duty, because its end product is metallic type. Indeed, that machine is defined as a typesetting machine in dictionaries antedating the 1930 Tariff Act. Subsequent to 1930 a new technique known as photocomposing was developed. According to the single witness in this case, the sales engineer of the plaintiff corporation who had been associated with typesetting machines for 38 years, photocomposition apparatus was first developed around 1950. He described it as "a new modern method of typesetting." The imported machines operate on the photocomposing principle and are a product of the makers of the Monotype machines, hence the name "Monophoto." Actually, they are adaptations of the Monotype machine wherein the metal type molds in the matrix holder are replaced by a photographic transparency on which the type characters appear as transparent areas on an opaque background, the hot metal casting apparatus being replaced by a light source and an optical system, and the galley being replaced by a photosensitive strip and support in an appropriate light-tight holder. The machine is controlled by the same paper tape made in the same keyboard machine, which tape now controls the movement of the photographic transparency in the matrix holder in two directions to selectively position the characters in the path of the light source. The optical system and photosensitive material holder coact to produce lines of composed type on the photosensitive material, on which said lines appear in a column after development. This photographic member is then used by the printer to make printing plates in substantially the same way he would use the reproduction made, from a repro-proof, the advantage of the machine being that some steps in arriving at the, final printing plate can be eliminated. So much for the technological background.

The issues below were whether the Monophoto machine is a camera under paragraph 1551, as the collector classified it, an article having as an essential feature an electrical element or device, as the Customs Court classified it, or within the meaning of "all typesetting

machines" in paragraph 1643, where appellant contends it should be classified.

In its protest, appellant made alternative contentions, claiming, first, duty-free status under paragraph 1643, and, secondly, classification under paragraph 353. The court below sustained the protest to the extent of holding the Monophoto machine is not a camera and granting classification under paragraph 353, but denied the classification primarily sought. We agree that the machine is not a camera, although not for the reasons stated in the Customs Court's opinion, which we deem it unnecessary to discuss except as they may form a part of the conclusions which are hereinafter considered.

The imported machine was held below to be classifiable under paragraph 353 because it is admittedly operated by an electric motor and has other electrical features such as its illumination system, but principally because it was found not to be specially provided for in paragraph 1643 in the category of "all typesetting machines." We shall direct the remaining discussion, therefore, to consideration of the correctness of the latter holding.

The Government's brief, under the heading "Appellee's Contention," adopts the premise of the Customs Court's conclusion in saying:

The imported monophoto device is by design and construction dedicated to its dual function of setting type and photo-composing same. Thus, it is something *more* than a typesetting machine and is therefore excluded from classification under the provision for such machines in paragraph 1643, *supra*.

It is to be noted that the Customs Court did not hold that the Monophoto machines imported are not typesetting machines. Indeed, it held that "the first phase of the machine's operation" is setting type. It said, "In this aspect of the machine, it performs a function and serves a purpose, as a typesetting apparatus * * *." It said that the perforated paper roll, which, as we have explained, controls the operation of the Monophoto machine, "contains the information necessary to control the typesetting operation." Appellant's contention, in the lower court as it is here, was that since the machine *is* a typesetting machine, it is comprehended by the statutory phrase "all typesetting machines"; but the Customs Court said no, it cannot be so classified because it is *more* than a typesetting machine, citing four prior decisions, two by this court, to support that proposition. We find it unnecessary to discuss them or to question the point of law for which they are cited.

The basis of the lower court's finding that the Monophoto machines are "more than" typesetting machines was that these machines perform a "dual function" of which typesetting is but one part. The other part is supposed to be "composing the type," or "its later, or final, phase of operation, which produces the sensitized film of composed type that is the ultimate product desirable for printing proc-

esses," or "photocomposing" type which has somehow previously been "set," as a distinct and separate operation. After saying these things, the lower court concluded: "In other words, the monophoto machine is something more than a typesetting machine."

We think that the lower court misapprehended the functions of the machine and their relation to the terms "typesetting" and "composing." We are constrained to agree with appellant's statement in its brief: "The fact of the matter is that this apparatus has only one function—it *sets type* on sensitized paper [or it may be on film]." [Our emphasis.] Appellant quotes its witness as saying of the Monophoto machine:

Q. * * * What is the objective of that machine; what is its function and purpose?

A. Its function is to produce *composed type* to be used for printing by either offset or gravure process. [Our emphasis.]

It will be observed that the *single* function of the machine has been stated to be both setting and composing type and therein lies the answer to the issue in this case, for, as is amply borne out by the dictionaries, setting and composing are one and the same thing. To go back to the 1913 Funk & Wagnalls cited above, under "composition" it states, "*Print.* The act or process of setting type for printing." Webster's New International Dictionary (1937) under "compose" says, "5. *Print.* To arrange (type) in a composing stick in order for printing; to set (type)." Under "composition" it again says, "16. *Print.* The setting up, arranging, and imposing of type." We may even refer in support of this conclusion to the definition quoted in the Government's brief of a "typesetting machine" (Webster's New International Dictionary of the English Language, 2nd Edition):

Any of various keyboard machines for automatically *composing* printers' types. * * * Those chiefly used at present are the type-casting machines: the Linotype, invented by Ottmar Mergenthaler (1878), and the *Monotype*, invented by Tolbert *Lanston* (1885). [Our emphasis.]

Insofar as any duality of function in a Monotype (hot metal) typesetting machine is concerned, as between setting and composing, we are bound to conclude that it is non-existent and likewise non-existent is any basis for a finding that a machine which performs the functions of a Monotype machine is "more than" a typesetting machine. The same conclusion applies equally to a Monophoto machine. The difference resides only in the form of the matrix which contains the characters, or font of type faces, which are to be set or composed and the physical form of the final composition. In the Monotype the matrix is metal and the characters are in the form of intaglio mold cavities into which molten type metal is injected, one at a time; in the Monophoto machine the matrix carries the characters (which are in the same type of matrix holder for use with the same type of position-

ing mechanism) as transparent areas through which a light beam passes, to expose them through an optical system on a photosensitive surface. In the former case, type is composed or set in metal; in the latter case, type is set or composed photographically on a strip of sensitized paper or film. Both machines are used in the same trade by the same people for substantially the same purposes, the ultimate production of printing plates which are used to print with ink on paper. Furthermore, the typesetter or compositor, who as a person initiating the entire operation actually sets or composes the type, uses the same keyboard to punch the same paper tape whether the final act in the setting or composing process is done by the Monotype machine in metal or the Monophoto machine on film.

The witness, who was expert in this field, constantly referred to the hot metal, or Monotype process, as the old-fashioned process. Thus we have before us an example of technical progress requiring that we consider whether something necessarily unknown to Congress when the words "all typesetting machines" were written into the statute was intended to be included by that clause. On the facts of this case, we are unable to see in the Monophoto machine anything more than a technical advance in typesetting machines which Congress must have foreseen. The Monotype machine, having been well-known in the printing industry long before 1930, was presumably clearly within the ambit of paragraph 1643. Its modern version, the Monophoto, we believe, falls in the same category. The language used, *"all"* typesetting machines," [our emphasis] does not suggest that we should try to search out nice differences between one kind and another or exclude improvements. We are also mindful of the truism that ▮ tariff acts are written for the future. *Pickhardt* v. *Merritt*, 132 U.S. 252, 257; *Newman* v. *Arthur*, 109 U.S. 132, 138.

We hold that the imported Monophoto machines should have been classified under paragraph 1643 as typesetting machines; this holding applies also to parts of such machines. The judgment below is *reversed*.

KIRKPATRICK, J., with whom WORLEY, C.J. joins, dissenting.

I am unable to agree with the majority that the Customs Court erred in ruling that the importation is dutiable under Paragraph 353 as an article having as an essential feature an electrical element or device.

It is designated a " 'Monophoto' Filmsetting Machine," its function is photocomposing and its end product is a sensitized paper or film for use in offset and gravure printing processes.

The majority refers to the Monotype machine, which provides cast composed printers' type as its end product, and notes that that end product not only may be used directly for the final printing, but may be employed instead to print a "reproproof" which, in turn, may be

photographed to provide a film serving the same purpose as the end product of the importation. They then find no basis for regarding a Monotype machine as "more than" a typesetting machine and then apply the same conclusion to the imported Monophoto machine.

Of course the Monotype machine itself is a typesetting machine, casting composed printers' type and falling within the dictionary definitions of such a machine. But obviously "more than" that typesetting machine would be required to produce the end product of the imported machine, which, it appears, never produces set type such as is the end product of the Monotype machine.

I would affirm the judgment of the Customs Court.